# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## JENNIE L. BROADDUS v. R. C. BROADDUS, ET ALS.

### December 17, 1925.

1. CONTRACTS—*Impairment of the Obligation of the Contract.*—The sanctity and obligation of contracts are regarded so essential to the public welfare; that where they are freely and voluntarily made by persons *sui juris*, the impairment of their obligation is forbidden by our organic law.

2. AGENCY—*Fraud of Agent—When Imputed to Principal—Settlement between Executrix and Heirs—Case at Bar.*—Any unlawful intent or purpose of the agent of an executrix in procuring a deed from the heirs could not be imputed to executrix unless she knew of the same, or could not have secured the deed except through fraud of the agent. As in the instant case, a suit for rescission of a deed, there was no evidence to sustain the first proposition, and if the deed was constructively fraudulent it could not stand whoever secured it; the question of the agent's misconduct was immaterial.

3. DESCENT AND DISTRIBUTION—*Real Property.*—Upon the death of a landowner, title to his real estate vests immediately in his heirs at law, subject to the widow's dower and to be divested by a valid will.

4. DESCENT AND DISTRIBUTION—*Personal Property—Executors and Administrators.*—Upon death, the personal property of the decedent vests in his executrix, when the will is probated, for its conservation and reduction to cash if necessary for the payment of debts, costs of administration and the residue to the payment of the legacies ratably.

5. WILLS—*Legatees and Devisees—Personal Property Insufficient to Meet Charges Against it—Claim of Legatees Against Real Property.*—Where personal property was admittedly insufficient to meet the charges against it, the legatees had a claim against the real estate (title to which had vested by law in the heirs at law) for the balance due them respectively.

6. DESCENT AND DISTRIBUTION—*Executors and Administrators—Rents.*—Rents accruing prior to the death of a testator are a part of the personal estate, payable to his executrix, but those accruing after the death of testator are payable to the heirs at law.

7. WILLS—*Descent and Distribution—Real and Personal Property—Liability for Debts and Legacies—Case at Bar.*—Where the personal property of

a testator was admittedly insufficient to meet the charges against it, the executrix took the personalty subject to the charges in the will as the primary fund, coupled with the duty to convert the personal estate into cash and apply it ratably to the legatees after payment of prior charges. The real estate descended to the heirs at law charged with the payment of debts and general money legacies as a secondary fund.

8. EXECUTORS AND ADMINISTRATORS—*Devastavit—Real Estate Subject to Legacies—Case at Bar.*—Where the personal property was admittedly insufficient to satisfy the legacies given by testator and the charges against the estate, if the debts were unduly paid out of their order, or the personalty exhausted, whether by *devastavit* or distribution the real estate in the hands of the heirs could be subjected to, the legacies.

9. DESCENT AND DISTRIBUTION—*Executors and Administrators—Power of Executor of Real Estate.*—Where real estate was not devised to be sold for the payment of debts and charges against it, the executrix had no power over the same. The real estate could only be subjected *in invitum* in equity, after the personalty was exhausted, at the suit of the creditors or legatees.

10. FIDUCIARIES—*Fiduciary Purchasing Trust Estate.*—The rule of universal application to all persons coming within its principle, is, that no party can be permitted to purchase an interest where he has a duty to perform which is inconsistent with the character of purchaser.

11. EXECUTORS AND ADMINISTRATORS—*Confidential Relations Between Executrix and Heirs—Deed from Heirs to Executrix—Case at Bar.*—By her appointment as executrix of the personal property of her husband, such confidential relations were not created by operation of law between the executrix and the heirs at law of the husband, that the executrix, thereby, became *prima facie* disqualified to become the purchaser of any part of her husband's estate from his heirs, and a deed from the heirs to the executrix was not presumptively fraudulent.

12. CONTRACTS—*Freedom of Contract.*—Freedom to contract is one of the liberties of every *sui juris* citizen which the law very carefully safeguards.

13. EXECUTORS AND ADMINISTRATORS—*Heirs—Legatees—Right to Deal with Interest in Estate.*—Heirs or legatees, under no disability to contract, have the right to sell or buy, and give away and receive, any interest that they might respectively have in the estate of testator, providing it is done freely.

14. FIDUCIARIES—*Fiduciary Dealing with Trust Estate—Constructive Trusts.*—The equitable doctrine as to constructive trusts, arising from purchases by trustees, executors and persons having a confidential character, rests upon the general principle that the purchase or reception of the gift is inconsistent with the legal duties to the seller or donor; that is the general interests of justice and fair dealing

forbid a party from profiting by a contract made, wherein he occupied the inconsistent character of buyer and seller, or donor and donee.

15. EXECUTORS AND ADMINISTRATORS—*Executor's Sale—Purchase by Executor.*—Executors and administrators are fully within the application of the principles governing the dealings of a fiduciary with the estate being considered in equity trustees for creditors, legatees, distributees, and heirs, and, in that character, disabled from purchasing at sales of either lands or chattels under a power in the will or a power derived from the court.

16. FIDUCIARIES—*Fiduciary Purchasing Trust Estate—Limitations on the Rule.*—The rule is not that a fiduciary cannot buy from his *cestui que* trust, but that he shall not buy from himself. The rule which imposes upon the trustee incapacity to deal with and buy from his *cestui que* trust applies only where the trustee attempts to purchase from or sell to himself. The rule at no time over-reaches the point that the trustee cannot deal with his *cestui que* trust.

17. EXECUTORS AND ADMINISTRATORS—*Deed from Heirs at Law to Executrix— Validity of Deed—Case at Bar.*—In the instant case, testator appointed his wife executrix. Testator supposed himself to be worth $60,000. He desired to divide $20,000 among his next of kin and certain other named legatees and desired to give the rest to his wife. A draftsman, with this information, prepared the will giving the wife $40,000, "as her sole property and fee" and provided for nine other legacies, including the next of kin, amounting to $19,000, in amounts designated by the testator. The personalty was insufficient to satisfy the lagacies, and the heirs at law, on receipt of their legacies from the executrix, conveyed by deed their interest in the estate to the executrix.

*Held:* That, conceding that the deed was executed to the executrix through her fiduciary relations, it was not void, but voidable, throwing the burden of proof upon her to prove that there was no undue influence nor suppression of facts.

18. RESCISSION, CANCELLATION AND REFORMATION—*Ignorance of Law.*— Ignorance of law is never ground for rescission of a contract unless perhaps where the other party knowingly has taken advantage of such ignorance for fraud.

19. EXECUTORS AND ADMINISTRATORS—*Deed from Heirs at Law to Executrix—Validity of Deed—Case at Bar.*—Hairs at law, who were also legatees under the will of decedent, executed a deed freely and voluntary, conveying their interest in the estate to the executrix, widow of testator, upon receipt of their legacies from her. Four years after they had executed the deed, they came into court claiming that certain duties imposed by law upon the executrix were not performed by her; that they were ignorant of those legal duties; and that they did not read the deed or understand its legal obligation and purport, nor understand their legal rights as heirs of their brother and uncle.

*Held:* That, in absence of fraud on the part of the executrix, the deed could not be rescinded.

20. EXECUTORS AND ADMINISTRATORS—*Deed from Heirs At Law to Executrix—Validity of Deed—Case at Bar.*—Heirs-at-law, men and women of mature age, in physical and mental health, some with business experience, were not in a condition of inferiority and inequality with the executrix, testator's widow, amounting to actual fraud which would avoid a deed from them to executrix.

21. WILLS—*Probate—Notice.*—The statute law in Virginia requires a person in possession of a will to produce it in court for probate; the proponent may have the will probated and recorded *ex parte* or *inter partes*, in his discretion, and when admitted to probate and recorded, it became a public court record and notice to every one interested in the estate, especially the heirs and distributees.

22. WILLS—*Probate—Notice to Heirs and Legatees—Deed from Heirs to Executrix—Case at Bar.*—In a suit by heirs to set aside a deed of their interest in decedent's estate to his executrix, complainants claimed that executrix's failure to exhibit the will or copy thereof to the heirs, to tell them the character, amount, and value of the estate, and that there was a partial intestacy of the estate, were breaches of duty that she owed under the law to the heirs severally and collectively. The executrix who was decedent's widow had proceeded as required by law to publish her husband's will.

*Held:* That complainants could not prove ignorance of the court records and their legal effect as a suppression of truth, coupled with the claim that they did not read and understand the deed, and thus destroy the obligation of the deed.

23. EXECUTORS AND ADMINISTRATORS—*Deed from Heirs-At-Law to Executrix—Validity of Deed—Case at Bar.*—In the instant case, a suit to set aside a deed from heirs at law to the executrix, widow of testator, the deed upon its face showed that it was a contract of hazard, and that complainants as distributees and heirs were entitled by law to any excess of estate of which decedent died intestate.

*Held:* That it was not within the course of ordinary human conduct for complainants to have executed the deed merely upon presentation, without any inquiry or explanation, unless they knew testator's valuation of his estate and his desired disposition thereof.

24. EXECUTORS AND ADMINISTRATORS—*Deed from Heirs At Law to Executrix—Validity of Deed—Case at Bar.*—In the instant case, a suit to rescind a deed from heirs at law and legatees of their interest in the estate of a decedent to his executrix, the main issue between the parties arose out of the value of testator's real estate. The question presented was, was the value of the real estate so grossly inadequate as to furnish satisfactory and decisive evidence of fraud? All estimates of value are uncertain and the opinions of the witnesses in this case took a very wide range.

>     *Held:* That, the evidence did not establish that gross inadequacy
>     necessary to warrant rescission.
>
> 25. RESCISSION, CANCELLATION AND REFORMATION—*Gross Inadequacy in
>     Price.*—If there is nothing but mere inadequacy of price the case
>     must be extreme in order for the interposition of equity.
>
> 26. RESCISSION, CANCELLATION AND REFORMATION—*Gross Inadequacy in
>     Price—Case at Bar.*—The instant case was a suit to rescind a deed
>     from heirs at law of a decedent to his executrix. Gross inadequacy
>     of price, based only upon variant conflicting opinions of witnesses,
>     however honest those witnesses, who made no allowance for the cost
>     of reducing the real estate into cash, and repairs and improvements,
>     put upon the property subsequent to the conveyance, would not
>     justify a court in finding the contract or conveyance fraudulent,
>     especially when the estimate of the value upon which the grantees
>     acted was that declared by the testator immediately before his
>     death. The assessed value fixed by law for taxation, and used as a
>     basis in many instances for borrowing and lending money, was very
>     little more than one-half of the highest estimate contended for
>     by the heirs and adopted by the lower court.
>
> 27. EXECUTORS AND ADMINISTRATORS—*Deed from Heirs At Law to Exec-
>     utrix—Validity of Deed—Case at Bar.*—Where a deed from heirs at
>     law to executrix of decedent was executed freely and voluntarily,
>     and the evidence failed to prove that the executrix had outside
>     knowledge of the value of the real estate, and there was no fraud
>     nor constructive fraud, nor any undue advantage taken of the heirs
>     in making the deed, the court cannot cancel and annul the same.

Appeal from a decree of the Hustings Court, Part Two, of the city of Richmond. Decree for complainants. Defendant appeals.

                                            *Reversed.*

The opinion states the case.

*C. V. Meredith, Brockenbrough Lamb* and *Chas. C. Russell,* for the appellant.

*Wyndham R. Meredith, Chas. L. Page* and *John S. Eggleston,* for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

This is an appeal from two decrees of the Hustings Court, Part Two, of the city of Richmond, Virginia, entered respectively November 5, 1917, and December 12, 1923, and adjudicating the principles of a suit in equity for the rescission of a written contract wherein the heirs at law of R. C. Broaddus were complainants, and Jennie L. Broaddus, his widow and executrix and in her own right, was defendant.

[1] The sanctity and obligation of contracts are regarded so essential to the public welfare, that where they are freely and voluntarily made by persons *sui juris* the impairment of their obligation is forbidden by our organic law. The essential issue therefore in this case is whether the contract was freely and voluntarily made, and its correct decision depends upon the application of the law to the facts of this particular case. The record is very large and the evidence very voluminous, but the disputed facts and circumstances are very few, therefore, a succinct chronological statement of them will greatly facilitate the discussion and decision of the case.

R. C. Broaddus died at his residence in South Richmond, on the first day of September, 1912, leaving a widow and no children. His next of kin and heirs at law were two sisters, Marietta Broaddus and Nannie E. Richerson, and three children of a deceased brother, namely, R. C. Broaddus, T. A. Broaddus and Nellie B. Villemagne, all of whom were *sui juris.*

Two days before his death, R. C. Broaddus sent for his friend H. A. Maurice, an attorney at law and police justice of South Richmond. When he entered the sick room there were present besides Mr. Broaddus, his wife, his sister, Miss Marietta Broaddus, and Miss Kase, the trained nurse. The testator informed Mr. Maurice in the presence of all those present that he

was sent for to write his will; that he was worth
$60,000.00, and that he desired to divide $20,000.00
amongst his next of kin and certain other named
legatees, whom he named with the specific amount he
desired to give to each, and desired to give the rest
to his wife. When the specific legacies he desired to
give were added up, it was found that those given his
next of kin, varying from $1,500.00 to $4,500.00,
amounted to $13,500.00 and with the legacies given
others aggregated only $19,000.00. The testator's
attention was called to the fact that only $19,000.00
was given in specific legacies, and he was asked what
to do with the extra $1,000.00, and he said divide it
among them.

The draughtsman, with this information and in-
structions, prepared the will, which after providing
for the payment of the testator's debts, gave his wife
$40,000.00 "as her sole property in fee," and nine
other legacies including his next of kin amounting to
$19,000.00, in amounts designated by the testator.
His wife was nominated as executrix, with request that
no bond or security be required of her. This will was
read over to the testator, approved by him, as though
he was satisfied that he had, by the charges therein
contained, exhausted his entire estate, and was prop-
erly executed on the 30th day of August, 1912, in the
presence of the subscribing witnesses, Mary Thomp-
kins Kase, M. W. Shepherd and D. B. Winfree. Mau-
rice, the draughtsman, took the will and kept it in his
possession until the evening of the 15th·day of Sep-
tember, 1912, the day before it was probated in court
as hereinafter set forth.

Clarence Vaden, who had been employed in the
office of Judge E. H. Wells, called on Mrs. Broaddus,
who was without business experience, on the night of

her husband's death, and tendered his services to her in the winding up and management of the estate, with-out compensation, stating as his reason for this service that the testator had been kind to him on several occasions, and Vaden's services were accepted.

Two or three days after the testator's death, and before the will was probated, his valuable business was purchased by T. A. Broaddus, a business man about thirty-four years of age, the favorite nephew of the testator, to whom he left $4,500.00, and who had been in business with his uncle from the age of sixteen up to about two years prior to his death. The purchase price was credited against his legacy.

On the 16th day of September, 1912, it being the first day of the September term of the Hustings court part two, the executrix having secured the will from Maurice the evening before, at the suggestion of Judge Wells, presented the will for probate in his private office adjoining the court room, and the will having been proven to have been signed and witnessed accord-ing to law, was probated as the last will and testament of R. C. Broaddus. Jennie L. Broaddus was appointed executrix as requested in said will without security. The estate of the decedent was valued at sixty thous-and dollars for the purpose of the tax upon its probate.

After the will was probated and Mrs. Broaddus qualified as executrix, before the personal property was appraised or the debts against the estate had been ascertained, Vaden suggested to the executrix that the most direct way to settle up the estate was for her to pay all the legacies, assume the debts and take a deed from the heirs of her deceased husband for all the rest and residue of the estate as her interest therein.

Mrs. Broaddus, so far as the evidence discloses, without any knowledge that the estate was worth

any more than the value placed upon it by her husband, and without sinister purpose or intent, acquiesced in Vaden's plan.    Whereupon he prepared, under the supervision of Judge Wells, the following very clear and concise deed.

"This deed, made this 23rd day of September, 1912, by and between Jennie L. Broaddus, executrix of Robert Clinton Broaddus, deceased, T. A. Broaddus and Ada P. Broaddus, his wife, Nellie Villemagne and J. E. Villemagne, her husband, R. Clinton Broaddus, Jr., and Bessie V. Broaddus, his wife, Marietta Broaddus (unmarried) and Nannie Richerson (widow), parties of the first part, and Jennie L. Broaddus, widow of Robert Clinton Broaddus, party of the second part.

"Whereas, Robert Clinton Broaddus departed this life on September 1, 1912, leaving the following heirs at law, to-wit: Jennie L. Broaddus, his wife, T. A. Broaddus, Nellie Villemagne (formerly Nellie Broaddus) and R. Clinton Broaddus Jr., the children of the deceased brother (the brother and his wife both being dead), Marietta Broaddus, a sister and Nannie Richerson (formerly Nannie Broaddus) also a sister; and

"Whereas, by the last will and testament of the said Robert Clinton Broaddus, dated August 30, 1912, duly probated September 16, 1912, in the Hustings Court, Part Two, of the city of Richmond, Virginia, all of the heirs at law, together with others, were bequeathed certain amounts therein specified; and

"Whereas, the said Jennie L. Broaddus, executrix of the said will, has paid in full all the devises made in said will, with the exception of herself, and desires that the remainder of the estate be conveyed to her in fee simple as her share, or devise under said will.

"Now, therefore, this deed witnesseth:

"That for and in consideration of the aforesaid special and separate bequests made to them respectively in said will, as well as the sum of ten dollars ($10.00), cash in hand paid, the receipt whereof is hereby acknowledged, the said parties of the first part do hereby convey, transfer, assign, sell and set over, release and quit-claim unto the said Jennie L. Broaddus, with special warranty, all their right, title and interest, of every kind, character and description in the estate of the said Robert Clinton Broaddus, be the same in real estate, personal property or mixed and located in the city of Richmond, Virginia, Chesterfield county, Virginia, or elsewhere.

"Witness the following signatures and seals."

On September 23, 1912, Miss Marietta Broaddus, Mrs. Villemagne and J. E. Villemagne, her husband, came to the Broaddus residence where they met Vaden and Mrs. Broaddus. The above deed was handed to them to read and examine. No questions were asked nor any inducements offered or information volunteered. They remained at the residence an hour or two, and during that time voluntarily signed and acknowledged the deed.

According to Mrs. Villemagne nothing was said about the estate or its value except: "Well, Mrs. Broaddus told us that she was settling up early or quick and she would see—that she had not gotten in all the bills and she would see that we all got our share and if there was any lacking she would be the one—she would go short."

After the above parties had executed and delivered the deed, it was given to Vaden who took it to the store of T. A. Broaddus where it was executed by him and his wife in the presence of his partner, Simp-

son, and delivered to Vaden. Then Vaden took it to the residence of R. C. Broaddus, Jr., where it was executed by him and his wife and delivered.

This deed was then given to Miss Marietta Broaddus who sent it to her sister Mrs. Nannie Richerson in Caroline county, who executed it on September 27, 1912, and returned it. It was recorded in Chesterfield county, Virginia, on October 7, 1912, and in South Richmond on October 16, 1912. Subsequently, Miss Marietta Broaddus returned the check for her legacy and at her own request received in lieu thereof a deed for one of the houses which Mr. Broaddus had owned at the time of his death.

At the end of the year, the executrix settled her account before the commissioner of accounts, which showed the amount that came into her hands to be $32,825.37 and the debts of the estate amounted to $11,537.27. The net value of the personal estate was therefore $21,288.10 with which to meet legacies aggregating $59,000.00. This account was confirmed by the court and is conceded to be correct except an allowance of $750.00 to Vaden for services to the estate and the commissions of the executrix.

The records in the courts showed that the fair cash value of the real estate was fixed by the assessors for the year 1912 at $29,345.00 for taxation.

In September, 1916, Jennie L. Broaddus instituted a suit in the Hustings Court, Part Two, of the city of Richmond, against Clarence Vaden for deceit, claiming damages to the amount of $10,000.00. Shortly after this suit was instituted, and four years after the execution of the deed above set forth, Vaden went to one of the complainants in this suit and told him that they had been *flim-flamed* in that deed of settlement. Vaden, who was the moving spirit in this settlement,

did not state in what particulars it was fraudulent nor was he examined as a witness in this suit.

Shortly thereafter R. C. Broaddus, Nannie E. Richerson and Nellie B. Villemagne employed Charles L. Page, attorney for Vaden, to investigate the transaction. Mr. Page requested Augustine Royall and A. L. Adamson, two realtors, to value the real estate of which R. C. Broaddus died seized and possessed. On November 13, 1916, they reported the present value of the real estate in South Richmond to be $54,475.00, and the value in 1912 and for one year after as $54,-600.00. Frank T. Sutton, another realtor, on April 23, 1917, concurred in those valuations.

On the 13th day of December, 1916, Mr. Page filed the bill in this case charging Jennie L. Broaddus with fraud in procuring the deed of September 23, 1912, and prayed for the rescission of the same. The above bill was amended at the April term, 1917, of the court. T. A. Broaddus and Marietta Broaddus on June 27, 1917, filed their answer to said original and amended bills, and prayed that same be treated as a cross-bill which was so ordered. In addition to her answer and cross-bill, Marietta Broaddus filed by leave of court a petition in the cause. On July 26, 1917, Jennie L. Broaddus filed by leave of court her demurrer with the grounds thereof and her answer to the original and amended bills, the cross-bill and petition of Jennie L. Broaddus.

The demurrer being argued, the court on the 5th day of November, 1917, overruled said demurrer, and the complainants replied generally to the answer of Jennie L. Broaddus.

The parties began February 19, 1918, to take depositions which continued from time to time until the 15th day of June, 1920. The complainants all testi-

fied that Mrs. Broaddus did not exhibit to them the
will and that they did not understand the deed of
September 23, 1912, nor was the same explained to
them. Some of them went so far as to say that they
signed it without reading it. Three witnesses, in addi-
tion to Adamson and Royall, testified as to the value
of the real estate, and their estimates were practically
the same. Jennie L. Broaddus testified that she had no
knowledge of the value of the estate of her husband
except what was stated by him in the presence of
Marietta Broaddus and others when he requested
Maurice to draft his will; that she did not intend to
take any advantage of the heirs of her husband and
did not believe she had done so. It does not appear
from the record that Vaden had any independent
knowledge of the value of the real estate, and if he
did he certainly never communicated it to Mrs. Broad-
dus. She put in evidence the assessed value of his
real estate for the year 1912 for taxation, amounting to
$29,345.00, and she proved the value of the real estate
by five witnesses, including W. E. Purcell, Jr., who
had been State and city assessor of real estate for the
years 1910 and 1915. The average value of the real
estate fixed by these witnesses was $42,506.00. It
was admitted by counsel that the defendant had ex-
pended in repairs and improvements upon the real
estate from September 23, 1912, to April 1919, the
sum of $15,817.57.

This case was argued before, and submitted to, the
Hon. Wm. A. Moncure, judge of the Chancery Court
of the city of Richmond, who presided for Judge
Wells in this particular case by reason of the latter's
connection therewith. On the 12th day of December,
1923, the learned judge handed down the decree,
wherein he determined the facts proven by the volumi-

nous evidence in the case, and decided the principles of law applicable to those facts.

This decree decided that there was no residuary clause in the will of R. C. Broaddus; that after payment of funeral expenses, costs of administration, taxes, debts and the legacies aggregating $59,000.00, he died intestate to any residuum; that the value of the real estate that he died seized was between fifty and fifty-five thousand dollars; the value of personalty was about $32,825.15; making a total value of the estate between eighty-two thousand and eighty-seven thousand dollars; that after debts, costs of administration, commissions were paid, amounting to $11,537.27, "there was a net estate of the value of more than $71,000.00, out of which to pay legacies aggregating $59,000.00— a residuum of $12,000.00—or more;" that Jennie L. Broaddus, *as executrix*, partly in person, and partly through her agent, Clarence Vaden, in the payment of their legacies secured from the heirs at law of her husband the deed of September 23, 1912; "that at this time, to-wit: September 23, 1912, the heirs at law of R. C. Broaddus, deceased, had not seen his will, and did not know the character, amount and value of the estate of R. C. Broaddus, deceased; they did not know there was a partial intestacy of his estate, and were not informed of all these things by Jennie L. Broaddus, nor by Clarence Vaden, her agent. The heirs at law were told, however, the amount of money legacy given them. The court is further of opinion that Jennie L. Broaddus, as executrix, under the will of R. C. Broaddus, deceased, in securing and receiving said deed of September 23, 1912, thereby dealt with and handled the estate of her testator, R. C. Broaddus, to her personal profit and gain and that the said transaction is contrary to equity and good conscience,

and cannot be upheld in law, therefore, it is adjudged, ordered and *decreed* that the said deed or writing dated September 23, 1912, * * * * * * * * * * * * * * * * * * * * be and the same is cancelled, vacated and set aside, so far as the same affects the title to any property passing thereunder to Jennie L. Broaddus and so held by her at the bringing of this suit and the filing of the *lis pendens,*" and the cause was referred to a special commissioner to take certain accounts therein ordered. From this decree and that overruling the defendant's demurrer an appeal was granted, and the case is before us for review.

The case has been very ably and exhaustively argued by counsel on both sides, but no case has been found that decides the issues presented by this record, but the general rules as to fraud and constructive fraud were fully set out in the oral argument and the elaborate briefs of counsel. There is no difference of opinion between counsel as to the law of fraud and constructive fraud, but the contention is whether this case comes within those rules of law.

[2] In order to apply these rules to the given state of facts, it is necessary to determine the legal rights and duties of the parties to each other and the subject matter. This we will do in this case. But before we begin this discussion it will be well to say that any wrongful intent or purpose of Vaden cannot be imputed to Mrs. Broaddus unless she knew of the same, or could not have secured the deed except through his fraud; as there is no evidence to sustain the first proposition, and if the deed is constructively fraudulent it cannot stand whoever secured it, therefore, he may be dismissed from the discussion of this case.

[3] Under the law in Virginia, when R. C. Broaddus

died on September 1, 1912, title to his real estate vested immediately in his heirs at law, the complainants, subject to the widow's dower and to be divested by a valid will. *Elys* v. *Wynne*, 22 Gratt. (63 Va.) 224-230; *Mills* v. *Mills*, 28 Gratt. (69 Va.) 442-490.

[4] The personal property vested in his executrix, when the will was probated, for its conservation and reduction to cash if necessary for the payment of debts, costs of administration and the residue to the payment of the legacies ratably. *Elliott* v. *Carter*, 9 Gratt. (50 Va.) 541-548; *Frasier* v. *Littleton's Ex'rs*, 100 Va. 9, 40 S. E. 108.

[5, 6, 7, 8] The personal property being admittedly insufficient to meet the charges against it, the legatees had a claim against the real estate (title to which had vested by law in the heirs at law), for the balance due them respectively. The rents that had accrued prior to September 1, 1912, were a part of the personal estate, payable to the executrix, but after that date to the heirs at law. The legal relations fixed by law of the parties to this suit are that the executrix took the personalty subject to the charges in the will, as the primary fund coupled with the duty to convert the personal estate into cash, and apply it ratably to the legatees after payment of prior charges. The real estate descended to the heirs by law, charged with the payment of debts and general money legacies, as a secondary fund. If the debts were unduly paid out of their order, or the personalty exhausted, whether by *devastavit* or distribution, the real estate in the hands of the heirs could be subjected.

[9] The real estate was not devised to be sold for the payment of debts and charges against it, therefore, the executrix had no power over the same. The real estate could only be subjected *in invitum* in equity,

after the personalty was exhausted, at the suit of the creditors or legatees. *Litterall* v. *Jackson*, 80 Va. 604; *Pierce* v. *Graham*, 85 Va. 227, 7 S. E. 189; *Catron* v. *Bostic*, 123 Va. 385, 96 S. E. 845.

[10] In overruling the defendant's demurrer and decision of the case upon the merits the learned trial judge was of opinion that the equitable doctrine of constructive fraud was applicable to the facts of this case. Many cases cited are those of trustees, executors and administrators whose duty it was to sell the trust property, and who at the sale became the purchasers of the trust subject, but the rule is "of universal application to all persons coming within its principle, which is, that no party can be permitted to purchase an interest *where he has a duty to perform which is inconsistent with the character of* a purchaser." 2 Rob. Pr. p. 317.

The decree of the court adjudges that Jennie L. Broaddus, *as executrix*, in securing the deed of September 23, 1912, dealt with and handled the estate of her testator to her personal profit and gain, therefore, said deed is cancelled, vacated and set aside so far as the same affects any other property passing thereunder to her.

[11] The legal effect of this ruling is, that by the nomination and appointment of Jennie L. Broaddus as executrix of the personal estate of her husband, such confidential relations *were created by operation of law* between her and his heirs at law, that she thereby became *prima facie* disqualified to become the purchaser of any part of her husband's estate from his heirs, and the deed of September 23, 1912, was presumptively fraudulent.

[12, 13, 14, 15] Freedom to contract is one of the liberties of every *sui juris* citizen which the law very

carefully safeguards. The parties to this suit had the right to sell or buy, and give away and receive, any interest that they might respectively have in the estate of R. C. Broaddus, provided it was done freely. The doctrine as to purchases by trustees, executors and persons having a confidential character, rests upon the general principle that the purchase or reception of the gift is inconsistent with the legal duties to the seller or donor; that is the general interests of justice and fair dealing forbid a party from profiting by a contract made, wherein he occupied the inconsistent character of buyer and seller, or donor and donee. Assuming that the executrix occupied confidential relation to the heirs of the testator, the brief of counsel for the appellees cites the following very clear statement of the general rule prevailing in those jurisdictions where the law imposed the duty of sale upon personal representatives: "Executors and administrators are fully within the application of these principles, being considered in equity trustees for creditors, legatees, distributees, and heirs, and, in that character, disabled from *purchasing at sales of either lands or chattels under a power in the will or a power derived from the court:* for, as they always have a power and duty to sell lands under authority of the court so far as may be necessary for the payment of debts, their trust in its nature embraces both classes of property, and by virtue of their powers and duties in respect to both the lands and the personalty, they are substantially trustees, and, therefore, disabled from *purchasing for their own benefit,* and to the loss of those for whom they are entrusted." *Fox* v. *Mackreth,* 1 Lead. Cas. Eq. 246, notes.

[16] In *Ex Parte Lacey,* 6 Ves. 625, a further limitation of the doctrine is pointed out. Lord Eldon says:

"The rule I take to be this: Not that a trustee cannot buy from his *cestui que* trust, but that he shall not buy from himself. The rule which imposes upon the trustee incapacity to deal with and buy from his *cestui que* trust applies only where the trustee attempts to purchase from or sell to himself. The rule at no time over-reaches the point that the trustee cannot deal with his *cestui que* trust."

[17, 18] Careful consideration of the law and facts in this case do not reveal any legal superiority of Mrs. Broaddus over the heirs nor any inconsistency in her negotiating the contract of settlement with her sisters-in-law, nephews and nieces. The title to her husband's real estate was vested in them subject to payment of his debts and legacies in event the personalty was insufficient; the recorded will referred to in the deed of September 23, 1912, showed the amount of the legacies, of which hers was double all the rest; no appraisement of the personal estate had been made; the creditors had one year in which to file their claims; the records in the clerk's office of the court showed the fair cash value of the real estate as made by the State's duly qualified assessor; the deed informed them that she proposed to pay off all legacies, and assume all debts, and accept the residuum of the estate (be the same more or less) for her legacy. They conclusively knew that the surrender of their rights must be entirely voluntary, that they could make any investigation they chose, and take as much time for consideration of the deed and investigation as they respectively desired. Yet no questions were asked; no delay for investigation or advice was suggested, nor any inducements or representations made to any of them, but they each and every one executed the deed freely and voluntarily. Four years after they had executed the

deed they came into court, claiming that certain duties imposed by law upon Mrs. Broaddus were not performed by her; that they were ignorant of those legal duties; that they did not read the deed or understand its legal obligation and purport, nor understand their legal rights as heirs of their brother and uncle. All of these claims are based *upon ignorance of law* which is never ground for rescission of a contract unless perhaps where the other party knowingly has taken advantage of such ignorance for fraud.

The case of *Statham* v. *Ferguson*, 25 Gratt. (66 Va.) 28, is not analogous to this case and does not involve the same principles of law. In the *Statham Case*, Ferguson left a will by which he made a small provision for his widow. Probate of this will was rejected for defect in its attestation. Statham and Taylor, his sons-in-law, were made executors, and when the paper was rejected the widow renounced the administration in their favor and they qualified as administrators on the estate. Ferguson left his widow, sixty-five years old, and two daughters who were married, and the children of a deceased son, all by a former wife. One of these daughters and her husband, Taylor, lived with Ferguson and his wife at his death, and the other and her husband Statham lived in an adjoining tenement given to her by Ferguson on her marriage. A few days after their qualification, a deed was prepared and executed by the widow, Taylor and Statham, and their wives and adult grand-children, by which the parties agreed that the will of Ferguson should regulate the disposition of his estate; the widow thereby giving up some $25,000.00. In the presence of the family, two neighbors and the notary, but without any blood relation or special friend of the widow, who was sixty-five years old, without business experience, in

feeble health and shocked by her recent bereavement, the attorney for her husband read over the long and complicated deed and explained the same and the probable amount of the estate, and what she was surrendering. Upon her assenting thereto, the deed was executed. A short time after she made the deed, suit to annul the same was instituted. The court held that if the will had been valid, she would have had under the law one year in which to renounce the same, and that in her feeble mental and physical condition under the surrounding circumstances, she had not executed it voluntarily and free from undue influence and the deed was cancelled.

Conceding that the deed was executed to Mrs. Broaddus through her fiduciary relation, it is not void but voidable. The effect of which would be that the burden of proof would be upon her to prove that no undue influence nor any suppression of facts were used to overcome their freedom of action or hamper their understandings or volition.

[20] Counsel for appellees, it is true, urge upon the court that their relations and the circumstances put them in a condition of inferiority and inequality which amounted to actual fraud. The evidence does not disclose any such condition. The heirs were men and women of mature years, in physical and mental health, which the temptation to receive their legacies at once could not have disturbed. Besides the three men, two of whom were heirs and the other the husband of an heir, actually engaged in business, and had business experience sufficient to make them independent of guardianship.

[21, 22] The trial court found that the failure to exhibit the will or copy thereof to the heirs; to tell them the character, amount, and value of the estate,

and that there was a partial intestacy of the estate, were breaches of duty that she owed under the law to the heirs severally and collectively. The statute law in Virginia requires a person in possession of a will to produce it in court for probate; the proponent may have the will probated and recorded *ex parte* or *inter partes*, in his discretion. The widow proceeded as required by law to publish her husband's will, and when it was admitted to probate and recorded, it became a public court record and notice to every one interested in the estate, especially the heirs and distributees. To permit the appellees in this case to prove ignorance of the court records, and their legal effect as a suppression of truth, coupled with the claim that they did not read and understand their deed, thus destroy the obligation of the deed of September 23, 1912, would be to make contracts not worth the paper on which they are written. Persons cannot close their minds to every avenue of information and knowledge, benumb their acquisitive instinct with indifference, and subsequently expect the courts to relieve them from their self-imposed ignorance.

[23] Coming now to the consideration of their ignorance of the character, amount and value of the estate. The deed upon its face showed it to be a contract of hazard, that Mrs. Broaddus valued the real and personal estate at about sixty thousand, and that the appellees as distributees and heirs were entitled by law to any excess or estate of which he died intestate. It is a matter of general knowledge that when a person dies possessed of an estate, his neighbors, friends and relations immediately canvass its character, value and disposition, and this case does not appear to be an exception, as each of the appellees admit their knowledge of the provision made from them, while

Marietta Broaddus was in his home and apparently in the room when instructions for preparation of the will were given and it was executed. Besides, T. A. Broaddus was employed about the business of his uncle for nearly eighteen years and must have learned approximately his net worth and the character of his investments. It is not within the course of ordinary human conduct for the appellees to have executed this deed merely upon presentation and without any inquiry or explanation, unless they knew his valuation of his estate, and his desired disposition thereof.

[24] The main issue between the parties arises out of the value of the testator's real estate fixed by the opinions of their respective witnesses four and five years subsequent to the deed.

There is a wide difference of opinion between these witnesses, varying from $35,500.00, the lowest, to $54,600.00, the highest estimate. The trial court adopted the highest values, that of the appellees witnesses, and fixed its value at between fifty and fifty-four thousand dollars, thus creating a residuum of $12,000.00 or more. All estimates of value are uncertain and the opinions of the witnesses in this case take a very wide range. It does not appear that any individual witness or group of witnesses enjoyed peculiar opportunities or advantages in forming an estimate, except perhaps the real estate agent who assessed this real estate for taxation in the years 1912 and 1915. Their credibility and integrity are unimpeached. The question presented by this phase of the case is, was the value of the real estate so grossly inadequate as to furnish satisfactory and decisive evidence of fraud?

"Although the actual cases in which a contract or conveyance had been cancelled on account of gross

inadequacy merely without other inequitable incidents are very few, yet the doctrine is settled, by a consensus of decisions and dicta, that, even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for cancelling a conveyance or contract whether executed or executory. Even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting relief." 2 Pom. Eq. Jur. (2nd ed.) sec. 928.

[25] If there is nothing but mere inadequacy of price, the case must be extreme in order for the interposition of equity. 2 Pom. Eq. Jur. (2nd ed.) sec. 928.

[26] Gross inadequacy of price based only upon variant conflicting opinions of witnesses, however honest those witnesses, who made no allowance for the cost of reducing the real estate into cash, and repairs and improvements put upon the property subsequent to the conveyance, would not justify a court in finding the contract or conveyance fraudulent, especially when the estimate of the value upon which the grantee acted was that declared by the testator immediately before his death; and the assessed value fixed by law for taxation, and used as a basis in many instances for borrowing and lending money, was *very little more than one-half of the highest estimate.* The assessed value of real estate may not be full in Richmond, but it can hardly be so low as to shock the conscience of the court. The evidence utterly fails to prove that Mrs. Broaddus had any outside knowledge of the value of the real estate.

[27] While we have not discussed all the points

treated and argued by able counsel, because it would make this opinion (already regrettably long) unreasonably longer than it should be, but every point and the law thereof has been carefully considered separately and collectively as bearing upon the issue in the case, and we have come to the conclusion that there was no fraud or constructive fraud, nor any undue advantage taken of the appellants in making the deed of September 23, 1912, but it was executed freely and voluntarily, and the court cannot cancel and annul the same, therefore, the decree complained of will be reversed, and the bill, amended bill and cross-bill of appellees be dismissed.

*Reversed.*