# Staunton

C. R. WERTZ v. W. B. CLAY AND C. S. McNULTY, TRUSTEE.

September 17, 1931.

Present, Prentis, C. J., and Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Kime & Kime* and *Dillard, Moomaw & Dillard,* for the appellant.

*Volney E. Howard, Hart & Hart,* and *Woods, Chitwood, Coxe & Rogers,* for the appellees.

HOLT, J., delivered the opinion of the court.

This is a suit brought by C. R. Wertz to set aside a sale made by C. S. McNulty, trustee, to W. B. Clay, and to redeem the lands so sold and bought. For four years and through 1,200 pages of a printed record it has dragged its slow length along. Casually considered, the issues appear intricate and difficult; as a matter of fact they are neither:

On May 22, 1917, C. R. Wertz was the owner of three tracts of land in Roanoke county. One contained 123¼ acres, another fifty-three acres. These adjoined the corporate limits of Roanoke. The third, a twenty-seven and one-half acre tract, was some distance away. On that day he conveyed all of them to C. S. McNulty, trustee, in trust to secure a first lien of $20,000.00 and a second lien of $20,000.00 plus interest notes on the principal of this indebtedness; all of this principal indebtedness due at three years. The $20,000.00 second lien debt was due to W. B. Clay, and was held by him at the time of the foreclosure sale.

When pay-day came around, Mr. Wertz was unable to meet his obligations, a situation which had been suspected for some time. Clay was then in Florida, but had given instructions to the trustee to sell if his debt was not paid. This trustee, before advertising, saw Mr. Wertz and explained to him the situation, in reply to which Wertz said that the trustee would have to sell since he could do nothing. Thereupon the property was advertised and the date of sale set down for Monday, July 5, 1920. No complaint is made of the form of the advertisement or of its terms.

■ The trust deed provides that "such sale shall be made only after first advertising the time, place and terms thereof for at least thirty days in some newspaper published in the city of Roanoke, Virginia." This advertisement was inserted on May 31, 1920, in the Roanoke Evening World-News, a newspaper published in Roanoke daily except on Sundays. It also appeared in that paper on June 7th, June 14th, June 21st and June 28th, and was likewise published in the Roanoke Times on June 1, 1920, and in each issue of that daily paper up to and including June 29, 1920.

For the plaintiff it is said that these advertisements carried in these two daily papers do not conform to the requirements of this trust deed—that in neither of them was the property advertised for thirty days.

There are ten assignments of error, but they deal alone with the sufficiency of the advertisement and with the effect of a certain contract executed on July 3, 1920, between Wertz and McNulty, under which there was a postponement of this sale from July 5th to July 16th. All charges of fraud are expressly withdrawn.

■ As to whether or not there was a compliance with the trust deed's terms in the advertisements, as made, is a matter about which there is some difference of opinion. It is held in many cases that where publication for thirty

days is required, it must appear in each issue of the paper selected for thirty days. This rule is illustrated by the case of *McCurdy* v. *Baker*, 11 Kan. 111, and *Washington* v. *Bassett*, 15 R. I. 563, 10 Atl. 625, 2 Am. St. Rep. 929. On the other hand it is said that daily publication is not necessary unless expressly required and if sufficient in point of time, one insertion a week will suffice. *Montford* v. *Allen*, 111 Ga. 18, 36 S. E. 305, and 28 Am. & Eng. Ency. Law, 800. See also, *Bowles* v. *Brauer*, 89 Va. 466, 16 S. E. 356.

However sufficient or insufficient this advertisement may be, is of small moment, for its insufficiency, if it be insufficient, has been waived. In justice to the trustee, however, it should be said in passing that there was manifestly no purpose to do less than his duty. Substantially, he did all and more than all that was required of him.

Mr. Wertz was anxious to prevent this sale, and with that end in view he retained able counsel to represent him. Particularly, he was desirous of obtaining a delay of ten or fifteen days that he might possibly effect a private sale at from $70,000.00 to $75,000.00. With this in view, Mr. Fox, his counsel, went to see Mr. McNulty. Their dealings were friendly but at arm's length. Mr. McNulty had no confidence in Mr. Wertz's ability to sell this land privately. Mr. Fox wanted to secure for him a chance. This is his statement of what occurred at his interview with the trustee:

"When I went to Mr. McNulty's office to endeavor to get this continuance, he stated to me that Mr. Wertz had been trying to get him to do the same thing, but that he did not believe there was any use in it because he did not think that the property would be redeemed. I am giving the conversation in substance and not verbatim, of course. He asked me if he did not agree to continuance what we proposed to do, and I told him we would enjoin him; he asked me on what grounds, and I told him we could always find grounds to tie up a sale; he then said if we agreed to a

continuance we would have to agree to waive any defects; that he did not want to continue it, then advertise or proceed to sell and be then enjoined, to which proposition I agreed; he then said if he did continue it, he would have to have the amount of his commissions settled because if he did not we would then be in a row or dispute as to how much was to be paid for his services and that he had worked and fooled with this thing until he was sick of it and expected some compensation for his trouble. After some conversation, the details of which I do not recall, we agreed upon the amount stated in the contract. He then agreed to the continuance and we agreed to pay him this compensation only in the event we did succeed in raising the money and redeemed the property; if we did not raise the money and he sold, the law took care of his commissions as provided in the deed of trust. The amount to be paid Mr. McNulty was to be paid him as commissions agreed in advance provided we, within ten days, raised the money and redeemed the sale; whether the contract as interpreted by the court apportions this matter in the way that I have stated is not for me to say."

When this threat to enjoin was made McNulty may very naturally have thought that some technical objection to the sale had been unearthed. Just what that objection was Mr. Fox did not disclose and McNulty did not know, but he was anxious to have it put aside for all time, and, therefore, in the contract which was executed pursuant to agreement reached, it was three times declared that as a part of the consideration therefor Wertz waived every objection of every kind and character which he then had or might thereafter have to the sale, and said that if it should be that the trustee would finally have to sell, he might sell without any objection whatever on his part. The advertisement and its sufficiency was in the minds of the parties. Manifestly, its insufficiency had been suggest-

ed. This relevant recitation is made: "The said Wertz alleges certain defects and objections to holding said sale as advertised." Having suggested their existence, he proceeds to waive them.

That Wertz intended to waive and did waive all defects in procedure, including the advertisements, is too plain for discussion.

■ ■ While disclaiming any intention to charge fraud, this plaintiff then, in substance, proceeds to make such a charge, and says that McNulty misled him by this statement "that he (McNulty) said that he had complied with everything"—from which it is argued that McNulty deceived him in saying that the property had been properly advertised when it had not.

In the first place, the weight of evidence does not sustain Mr. Wertz in this charge. It is denied by Mr. McNulty and indirectly by Mr. Fox. But if it was made, it would not affect the situation in the slightest. Good faith is to be presumed and Mr. McNulty may very well have believed then, as he contends now, that the advertisement was sufficient and more than sufficient. Mr. Wertz was not dependent upon Mr. McNulty as to this matter but upon his counsel. The contract of July 3rd in terms shows that he thought the advertisement was defective and that he waived the defects which he believed existed. Certainly he had a copy of it, and those papers in which it was published kept their files within a stone's throw, always open to inspection.

Next it is said that this contract made between Mr. Wertz and his trustee may be repudiated by Wertz at his election.

Mr. Wertz is a grown man and apparently has had large business experience. The trustee was not obliged to postpone the sale advertised for July 5th at all. He did it at the insistence of Mr. Wertz and for Mr. Wertz's benefit. It cannot be said by remotest intendment that he relied upon and was misled by his trustee. On the other hand he was

represented by able counsel who dealt, as we have seen, with this trustee at arm's length.

It is not true that a *cestui que trust* can make no contract with his trustee, and particularly is this not true when the beneficiary, who is *sui juris*, retains to represent him independent counsel that he may secure from the trustee concessions which the trustee did not have to make. *Swineford* v. *Trust Co.*, 154 Va. 751, 152 S. E. 350; *Broaddus* v. *Broaddus*, 144 Va. 727, 130 S. E. 794; *Colton* v. *Stanford*, 82 Cal. 351, 23 Pac. 16, 16 Am. St. Rep. 137; *Vohmann* v. *Michel*, 185 N. Y. 420, 78 N. E. 156, 113 Am. St. Rep. 921. It would be unlooked for and curious if in furtherance of any fancied principle of equity, an experienced business man, acting through competent counsel and for the single purpose of advancing his interest, could enter into a contract with a trustee to postpone a sale, and afterwards repudiate that contract at pleasure. When one has employed independent counsel to treat with the trustee, the trust relations are for the time being suspended.

In the instant case, this contract is supported by two considerations. One is a promise to waive defects in procedure, and the other an agreement to pay, in the event of a private sale, a sum which would have equalled the trustee's commission had the property been sold at public auction and had brought the amount of the debt secured. As a matter of fact there was no private sale, and so that part of the contract goes out of the picture. Had there been a private sale, and if we assume that the promise to pay $2,000.00 conditionally, as a substitute for commissions, was an unenforceable promise, it would not affect the validity of the contract of July 3rd. That contract would still stand as a promise to waive all defects in procedure in consideration of an extension of time to the end that an advantageous private sale under negotiations might possibly be consummated. It may be said in passing that the trustee was, in any event, entitled to some pay for the work

which he had done, no matter what might have been the character of the sale thereafter made.

At the utmost, all that can be said on behalf of Wertz is that a trustee, who was entitled to make some charge, charged too much.

After the adjournment of the sale on July 5th to July 16th, notice thereof was published five times in the Roanoke Times, namely, on July 7th, 8th, 9th, 14th and 15th. A reasonable readvertisement of the postponed sale is all that is necessary. *Morris* v. *Scruggs*, 147 Va. 166, 136 S. E. 655; 19 R. C. L. 604; 27 Cyc. 1476. It was not necessary that it appear each day during the intervening time. Its sufficiency, as a matter of fact, is testified to by some of the leading lawyers of Roanoke. Finally, Mr. Clay, to protect himself, became the purchaser at $38,250.00, and thereupon made proclamation, through the auctioneer, to the effect that he would resell to anyone who would give him $40,000.00, interest and costs, which was a statement to the effect that he was willing to get out if he could get his money back. He also offered to sell to Mr. Penick (who controlled the first lien debt) one-half of his purchase for just what he had paid for it—conduct wholly incompatible with the entertainment of any under-cover purpose.

At that time he knew nothing about the contract of July 3rd, and did not know of its existence until December, 1926. He knew nothing about the alleged defects in advertisement, and so was a purchaser without notice and of course for value. But it is said that McNulty was his counsel. McNulty has testified that he did not represent him in this matter, and he has testified that he never had any agreement or understanding, directly or indirectly, with him relative to it. If we were to assume that this was not true, and that McNulty was his counsel, and that he knew or was charged with knowing everything which McNulty knew, the situation would not change. He was a purchaser for full value at a sale amply readvertised and

well attended. All that he could have known was that the sale had been advertised for July 5th, and that the trustee, upon the earnest insistence of Wertz, had agreed to postpone it until July 16th, and that Wertz had threatened an injunction if there were any attempt made to sell on the 5th. He would also have known that Wertz, in consideration of the postponement given, had agreed in a writing drafted by his counsel to waive every objection of every kind and character which he might theretofore have asserted against it, and to make none when the postponed sale was actually had. Knowledge of all of this could not have affected his status as a purchaser for value without notice. At the utmost, all that can be said is that he should have known that Wertz had claimed that some defects in fact existed but had waived them. As a matter of fact, Wertz was present throughout the sale on July 16th, and made no objection to anything which was then done.

But for unforeseen advancement in values, this suit would probably never have been instituted. Six years afterwards, when they had been substantially increased, and after Clay had been in possession and had borne all the burdens of ownership, Wertz, for the first time, awoke to the wrong which had been done him and became articulate. He never had a case, and if he had one, he has slept upon his rights.

The chancellor in the trial court appears to have given this cause painstaking and fair consideration. His judgment is presumed to be right until error is shown. This has not been done.

The decree appealed from should be affirmed, and it is so ordered.

*Affirmed.*

Epes, J., concurring:

I concur in the opinion of Holt, J., but I am also of the opinion that the advertisement of the sale here in question complies with the requirements of the deed of trust.