## Richmond.

GRAYSON LUMBER CO. AND OTHERS v. YOUNG AND OTHERS.

### November 11, 1915.

1. SPECIFIC PERFORMANCE—*Promptness of Complainant—Laches.*—A complainant seeking specific performance of a contract for the sale of real estate must have been ready, willing, desirous, prompt, and eager to perform on his part. Mere lapse of time, without any other circumstance of default in conforming to the terms of the contract may defeat a specific performance, for a court of equity, even where the statute of limitations does not apply, will not enforce stale demands, nor aid parties who have long slumbered upon their remedial rights.

2. SPECIFIC PERFORMANCE—*Description of Property—Extrinsic Evidence.*—A contract which a court of equity will specifically enforce must identify and describe the land directly or by reference with reasonable certainty. The description must be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary. Reasonable certainty is all that is required. Extrinsic evidence is allowed in order to apply, not to alter or vary the written instrument. It cannot be used to supply any defect or omission in the terms of the written contract, but is restricted to an explanation of what is contained in the contract.

3. VENDOR AND PURCHASER—*Infirmity in Title—Actual Notice.*—In order to fasten upon a purchaser actual notice of an infirmity in his title when the boundaries of his purchase clearly include the disputed land, the evidence must be such as to affect his conscience, and must be so strong and clear as to fix upon him the imputation of bad faith. A mere suspicion of notice, though strong, will not suffice.

Appeal from a decree of the Circuit Court of Grayson county. Decree for the complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*J. S. Bourne* and *B. F. Buchanan,* for the appellants.

*W. S. Poage, J. D. Perkins, R. Kirby, C. W. Waddy* and *W. C. Fields,* for the appellees.

KEITH, P., delivered the opinion of the court.

The record in this case is confused as to the pleadings and the facts. The original bill was filed by Joe Young, asking the court specifically to execute a contract between himself and one Eli Harless, by which it was claimed that Harless, in consideration of being taken to the home of Young and cared for for the remainder of his natural life, agreed to convey to him 100 acres of land on Pine mountain, in Grayson county, which Harless had purchased from Harold Pugh and to which he had an equitable title. Young avers that he has fully complied with his contract with Harless, and prays the specific execution of the contract. Harless being dead, his heirs at law were made parties, together with one John R. Pugh, who had obtained conveyances from the heirs of the land in question, with full knowledge, it is charged, of the equities of complainant. Deeds from some of the heirs to John R. Pugh, dated January, 1907, are filed as exhibits with the bill.

Young was by the court permitted to amend this bill by making one J. J. Spencer a party defendant, who it was alleged claimed an interest in the land in controversy. The bill was subsequently amended by leave of court by introducing the remaining heirs of Harold Pugh, A. H. Wells, Jerome Moltz and Fairwood Lumber Company, parties defendant.

At the June term, 1909, the court sustained a demurrer to the bill and amended bills, because they sought the enforcement of a parol contract for the sale of land without showing that the plaintiff could not be adequately compensated in damages, and, on motion of the plaintiff, leave was given him to again

amend his bill, and thereupon an amended bill was filed in which the plaintiff, in terms, abandons his claim to specific performance of the contract between himself and Harless, converts the proceeding into a creditors' bill, makes the Grayson Lumber Company and others additional parties, and prays that the estate of Eli Harless may be settled up, and a sale of his property both real and personal be had and the proceeds disbursed among those entitled thereto.

To this bill there was a demurrer, which the court ultimately overruled, and J. R. Pugh, one of the defendants, filed the answer which he prays may be treated as a cross-bill, in which he avers that he has acquired by deed from the heirs of Eli Harless title to the tract of 100 acres of land, referred to in the original and several amended bills, and that he has a good legal and equitable title thereto.

A. H. Wells, Moltz and the Grayson Lumber Company filed their answers, in which Moltz and the Grayson Lumber Company state that one Cox and Harold Pugh, the father of J. R. Pugh, obtained patents from the State of Virginia for two tracts of land, one of 1,162 acres and the other of 1,465 acres, the two tracts adjoining each other; that the 100-acre tract of land which is now in dispute was included within the exterior boundaries of these lands, but that Moltz and the Grayson Lumber Company bought and paid for them without any notice, actual or constructive, of any adverse claim to the land in question, and now hold the lands bought by them as innocent purchasers for valuable consideration and without notice.

A commissioner in chancery, to whom the case was referred, filed a report which shows that he has given careful consideration to the subject submitted to him, and he reaches the conclusion that the several purchasers of the tracts of land covered by the patents from the State of Virginia, down to and including the Grayson Lumber Company, had actual notice of the adverse claim to the 100 acres now in question, but that the Fairwood Lumber Company purchased without any notice of Harless's claim.

The Harless claim rests upon a title bond given by Harold Pugh to Eli Harless, which is as follows:

"Know all men by these presents, that I, Harold Pugh, am held and firmly bound unto Eli Harless in sum of two hundred dollars lawful money of the United States well and truly to be levied and made and paid unto the said Harless or his assigns.

"Now the condition of the above obligation is such that if the above bound Pugh shall make or cause to be made a legal title or deed to 100 acres of land lying in Grayson county and on Garrett's Knob adjoining the Carson land, boundary to be laid off by survey by said Pugh, then this obligation to be null and void, otherwise to remain in full force and virtue."

This contract was, by the decree complained of, specifically executed, and in this we think there was error.

A plaintiff seeking specific performance must have been "ready, willing, desirous, prompt and eager. Mere lapse of time, without any other circumstances of default in conforming with the terms of the contract, may defeat a specific performance, for a court of equity, even when equitable rights of action are not embraced within the statute of limitations, will not enforce stale demands, nor aid parties who have long slumbered upon their remedial rights." Pomeroy on Contracts, sec. 403.

The contract to be enforced in this case was entered into on the 10th day of May, 1889. This suit was not instituted until April, 1907, and the answer and cross-bill under which the litigation had been actually conducted were not filed until some years later. In the meantime both the parties to the original transaction had died, the property in question had passed by successive conveyances to subsequent purchasers, and no excuse is suggested for this long delay.

The contract does not possess that certainty which is necessary to call into exercise the jurisdiction of a court of equity for specific performance.

As was said by Pomeroy on Contracts, sec. 159: "A greater amount or degree of certainty is required in the terms of an

agreement, which is to be specifically executed in equity, than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere non-performance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of non-performance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite and precise understanding of all the terms; they must be exactly ascertained before their performance can be enforced."

In 36 Cyc. at p. 591, speaking of the certainty required of contracts, the specific performance of which is prayed, it is said: "The description" (of the subject) "must be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence necessary. Reasonable certainty is all that is required. Extrinsic proof is allowed in order to apply, not to alter or vary, the written agreement." The text is amply supported by the adjudicated cases.

In *Crockett* v. *Green,* 3 Del. Chy. Rep. 466, the agreement was: "I agree to sell to Alfred R. Crockett two acres and 150 square perches of land, commencing 170 feet from the south side of Green street, running parallel to Green street, with a front of one acre on Broad street, at $1,225." *Held:* That the agreement was too uncertain to be enforced by a decree for specific performance; that the land mentioned in the agreement, being part of other land of the defendant, and not capable of identification as a distinct and separate holding, the metes and bounds cannot be ascertained without supplying the defect by parol evidence of something not referred to in the contract."

That case well illustrates the rule that the office of parol evidence is to apply the description of the property in question and not to supply defects in that description.

In *Rampke* v. *Bouhler,* 203 Ill. 384, 67 N. E. 796, it is said: "The remedy of specific performance is designed to give to a party the thing contracted for, if this may be done equitably, rather than damages for a breach of the contract," and that "in order to justify the specific enforcement of a contract for the conveyance of land, the contract must show definitely what was contracted for and what the other party agreed to convey."

In that case the contract was to convey "four lots 25 feet by 150 feet deep, in either sections 8 or 9, town 36." It was held that this contract could not be specifically enforced, the court saying, that "in specific performance it is the province of the court to enforce the contract which the parties have made, and not to make a contract for them."

In *Grier* v. *Rhyne,* 69 N. C. 346, there was a contract to convey "a certain piece of land in the county aforesaid adjoining the lands of" A and B "and others, being a part of the Alexander tract, supposed to contain 30 or 35 acres." It was held to be so vague and indefinite that a court cannot enforce it specifically.

In *Mathews* v. *Jarrett,* 20 W. Va. 415, the opinion was delivered by Judge Snyder, and it was held, that "a contract which a court of equity will specifically enforce must be certain as well as fair in its terms, and the certainty required has reference both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence is fatal to any suit for a specific performance. Extrinsic evidence in such case is only admissible to a very limited extent. It cannot be used to supply any defect or omission in the terms of the written contract, but is strictly confined, in cases where no fraud, mistake or other equitable incident of a like character is alleged, to the function of explanation, and of exhibiting the surrounding circumstances in the manner and only to the same extent that such evidence is permissible in the interpretation of all other written instruments. In a suit for the specific execution of a contract for the

purchase of land, where neither the contract itself, nor the extrinsic proof of the surrounding circumstances, identifies or defines the tract or boundaries of the land, or refers to anything by which it may be identified with reasonable certainty, the court will not decree a specific performance, but will dismiss the bill."

The title bond in that case described the land to which it referred as "ten acres of land on the west side of the branch on the Keeny place (where said Mathews now resides), but said Mathews and Oliver Jarrett having forfeited said contract by reason of not paying said amount at the time specified." That description is certainly not less definite than that under consideration, which merely describes the land as being in Grayson county on Garrett's Knob and adjoining the Carson land.

In *Westfall* v. *Cottrills*, 24 W. Va. 763, the description of the land was, "forty acres off the Spring Fork end of my tract of one hundred and forty-seven acres on Beach Fork in Calhoun county;" and it was held to be too vague and indefinite to be specifically enforced.

In *Blankenship* v. *Spencer*, 31 W. Va. 510, 7 S. E. 433, the court of West Virginia was dealing with a description of a tract of land containing sixty-seven and one-half acres, "being the lower end of a certain survey sold and conveyed to S. by W., and adjoining the lands of H. and of R., in the district of F., in the county of G., in the State of W. Va.;" and it was held too vague and indefinite to authorize a court of equity to enforce the specific execution thereof, and that the bill filed for that purpose should be dismissed, and it was further held, "that such a bill cannot be maintained upon the ground of part performance, sufficient to take the same out of the statute of frauds, for that character of bill will only lie where the contract could have been enforced without such part performance, if the same or some memorandum or note thereof had been in writing, and signed by the party to be charged thereby, or his agent."

We could multiply indefinitely authorities upon this point, but those we have cited seem sufficient for our present purposes.

It cannot be disputed that the Grayson Lumber Company and the Fairwood Lumber Company are purchasers for value. It is earnestly contended, however, that they purchased with notice of the infirmity in their title to the 100-acre tract in dispute. The commissioner in his report finds that the Grayson Lumber Company had such notice, but that the Fairwood Lumber Company bought without notice. A careful consideration of the evidence satisfies us that the proof is insufficient to show that they bought with notice of the infirmity in their title.

In the case of *Mundy* v. *Vawter,* 3 Gratt. (44 Va.) 518, Judge Baldwin, delivering the opinion of the court, held, first, that "a conveyance of 'all the estate, both real and personal,' to which the grantor 'is entitled in law or equity, in possession, remainder or reversion,' is valid to pass the grantor's whole estate;" second, that the registry of a deed conveying land by such general description, is not notice in law to a subsequent purchaser from the grantor of the existence of said deed," and, third, that "actual notice of such a deed, and of its contents, would not affect such purchaser, unless he had notice that the land purchased by him was embraced by the deed. And the proof of such notice must be such as to affect the conscience of the purchaser, and is not sufficient if it merely puts him upon enquiry. It must be so strong and clear as to fix upon him the imputation of *mala fides."*

Few cases in our reports have been more frequently referred to than *Mundy* v. *Vawter,* and always with approval. This case is cited in *Vest* v. *Michie,* 31 Gratt. (72 Va.) 151, 31 Am. Rep. 722, where this court says, that the fact of notice may be inferred from circumstances as well as proved by direct evidence, but the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides,* and in this connection cites Professor Minor, who says, that the effect of the notice which will charge a subsequent purchaser for valuable consideration, and exclude him from the protection of the registry law, is to attach to the subsequent purchaser the guilt of fraud. It is, therefore,

never to be presumed, but must be proved, and proved clearly. A mere suspicion of notice, even though it be a strong suspicion, will not suffice. 2 Min. Inst. (2d Ed.) 887.

This case well illustrates the value of the principles we have discussed with respect to reasonable certainty in the description of real estate, where specific performance is sought, and the degree of proof which the law requires in order to fasten upon a purchaser actual notice of an infirmity in his title, when the boundaries of his purchase clearly include the disputed land and the effort is made to charge him with actual notice of a defect in his title. The Grayson Lumber Company bought a large tract of mountain land which was of very unequal value, and to grant relief by way of specific performance it would be necessary to supply by parol proof such a description of the property as would enable a surveyor to give it a definite location. This transcends the function of parol proof in such cases, which is, as we have said, to apply to the subject matter the description contained in the instrument under which the claim is made.

Another objection to the decree complained of is, that it gives relief against the Spruce Lumber Company, which is not a party to the suit.

Upon the whole case, we are of opinion that the decree of the circuit court should be reversed and the bill dismissed.

*Reversed.*