# Staunton

T. X. Parsons, Substituted Trustee of the J. P. M. Sim-
merman Estate, et als. v. J. L. Wysor, Adminis-
trator D. B. N. C. T. A. of the Estate of
E. Lee Trinkle, et als.

September 9, 1942.

Record No. 2576.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Showalter, Parsons, Kuyk & Staples,* for the appellant.

*S. B. Campbell,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

This suit was instituted by T. X. Parsons, substituted trustee for the estate of J. P. M. Simmerman, to charge the estate of E. Lee Trinkle, former trustee of the Simmerman estate, for the loss of trust funds. From an adverse decree as to the loss of a part of said funds, this appeal was allowed.

E. Lee Trinkle was named as trustee of certain property in the will of J. P. M. Simmerman, which was probated on

March 26, 1914. This property was sold in a suit instituted for the purpose, and on December 19, 1921, the proceeds of this sale, totaling $24,798.40, were by decree placed in the hands of the trustee to invest "in accordance with the laws of Virginia for the investment and handling of trust funds." E. Lee Trinkle, a former Governor of Virginia, died in 1939. There was found in his ledger a typewritten statement, dated March 30, 1938, containing a list of the securities held by the trustee of the Simmerman estate as of February 2, 1937. The securities listed on the statement were found in a separate envelope marked "E. Lee Trinkle, Trustee, J. P. M. Simmerman Estate." These notes and bonds, and the securities for their payment were as follows:

1. Four notes dated December 23, 1934, totaling ....................................$2,000.00
Signed Tico Factories, payable to and endorsed by Roy W. Sexton and Helen S. Trinkle.

2. One note dated November 1, 1935, totaling 500.00
Payable to the order of E. Lee Trinkle, Secured by a vendor's lien on property in Arkansas.

3. Balance due on one bond of $1,000, dated 500.00
October 27, 1926, signed by Howerton-Henry Realty Co., Inc., F. M. Hughson and May C. Hughson, payable to bearer one year after date.

4. Two bonds of $500 each, dated Oct. 22, 1927, 1,000.00
Signed by F. M. and May C. Hughson, Due one year after date.

5. One bond dated February 25, 1921, Signed 3,500.00
F. M. and May C. Hughson, Due three years after date.

6. Seven bonds, dated Dec. 12, 1930, totaling 8,000.00
Signed Ethel K. Spence, in her own right and as executrix of Will S. Trinkle, payable to bearer one year after date, payment secured by deed of trust on Dublin farm.

7. One bond, dated July 16, 1934. Signed by $750.00 Ethel Trinkle Spence, Ethel Lee Trinkle and E. Norred Trinkle.

8. One bond, dated December 12, 1930, Signed 8,500.00 by Ethel K. Spence, in her own right and as administratrix of Will S. Trinkle, Payable to bearer one day after date, Payment secured by undivided one-half interest in Sand Mountain farm.

The obligations stated in items 1, 2, 6 and 7 were collected in full by the substituted trustee. The obligations in items 3, 4 and 5 show on their face that recovery from the makers was barred by the statute of limitations prior to the death of the trustee. Neither the general creditors nor the personal representative of the Trinkle estate offered any evidence tending to exonerate the trustee for his failure to collect the notes before they were barred. The trial court very properly held that the fact that the notes showed on their face that they were out of date created a *prima facie* presumption that the trustee had not used due diligence in making the loans, or in preserving the securities and collecting the amounts due. These obligations were declared to be preferred claims owing by the Trinkle estate.

The only assignment of error is to the action of the trial court in refusing to allow the substituted trustee to recover from the estate of E. Lee Trinkle the amount of loss on the $8,500 bond mentioned in item 8 above.

Mrs. Ethel K. Spence executed a deed of trust on December 12, 1930, conveying to a trustee her one-half undivided interest in the Sand Mountain farm, located in Wythe county near Wytheville, containing 600 acres, to secure the payment of the $8,500 bond in question. The entire farm was sold at auction in this suit on February 24, 1941, for $14,455. One-half of the net proceeds of this sale was approximately $3,000 less than sufficient to pay the full obligation due the Simmerman estate.

■ It is conceded that the security in question is not within any of the classes of securities described in Code, sec. 5431, hence the personal liability of the trustee must be determined from pertinent general principles, and not from the statutory rule which, if complied with, furnishes immunity to fiduciaries who invest according to its provisions.

■ The standard of care, by which the management of trust funds by a fiduciary is measured, is that he must act in good faith and must exercise the same degree of discretion in the management of the trust that a prudent man of discretion and intelligence would exercise in his own like affairs. What constitutes this care, diligence and discretion depends on the facts and circumstances disclosed. See *Clemons* v. *Dennis*, 165 Va. 18, 181 S. E. 387; *Harris* v. *Citizens Bank, etc., Co.*, 172 Va. 111, 200 S. E. 652; *Powers* v. *Powers*, 174 Va. 164, 3 S. E. (2d) 162; *Buckle* v. *Marshall*, 176 Va. 139, 10 S. E. (2d) 506.

In each of the cases cited many of the former decisions of this court were reviewed. Specific references were made to Harrison on Wills and Administration, volume 1, page 705, wherein this noted author said: "The inquiry in every case in which it is sought to fix a liability upon a fiduciary is: 1. Did he act within the scope of his powers and duties? 2. Did he act in good faith? 3. Did he act with ordinary prudence? If he did so act, he is not responsible for the consequences of the act, though it result in the loss of the trust fund, or some part of it."

Mr. Justice Holt, in *Harris* v. *Citizens Bank, etc., Co.*, *supra*, added this pertinent statement: "They (fiduciaries) are required to do those things which a man of reasonable intelligence and prudence would be expected to do in the management of his own affairs, but this rule, like most rules, is to be construed in the light of the conditions obtaining when it is applied."

■ This standard of conduct has been applied consistently in this jurisdiction where the trustee had no personal interest in the transaction other than a reasonable

charge for services rendered. In each of the cases cited in which recovery against the trustee was denied, the evidence did not show the existence of any material fact which was calculated to influence the trustee adversely to the best interests of the trust estate. There was no evidence tending to produce prejudice or bias in the mind of the trustee for or against making the investment, or realizing on the investment if conditions justified such action to preserve the estate. The trustee, in accepting and managing the trust property, must keep himself in a position to form an unbiased judgment on questions affecting the property under his control. An unbiased judgment cannot be formed and a sound discretion cannot be exercised, within the meaning of the rule, if the trustee has a personal interest in the transaction or represents an interest therein adverse to the trust estate.

The circumstances, under which this $8,500 bond was executed by the maker and acquired by the trustee, are stated in a letter signed by Mrs. Spence to her attorneys in this case and filed as an exhibit. The pertinent parts of this letter read:

"When Governor Trinkle placed the deed of trust for $8500.00 against my half interest in the Sand Mountain farm he brought me the deed of trust to sign and of course stated that in the circumstances *we would just have to do it.* He tended to all the business and I trusted him implicitly and let him tend to it without attempting to take care of any of the details. So in one sense of the word I did not know anything about it, but of course *he told me what he was going to do with the money* and at the time I knew that he was going to use the money to pay and satisfy the items subsequently set out by him in the letter which Mr. Walker has shown to you gentlemen and which you are at liberty to file with this statement. But Governor Trinkle did not physically place any of the $8500.00 in my hands and I did not physically have anything to do with paying off the obligations mentioned in that letter. He had me execute the note and deed of trust, constituting a lien on my half

of the Sand Mountain farm. He then sold the note to E. Lee Trinkle, Trustee, J. P. M. Simmerman estate, for $8500.00 in cash. I do not know whether he had before this lent $8500.00 to himself or to a third person. That was none of my business, but after placing the $8500.00 note in the trust fund or fiduciary account he then took the $8500.00 in cash—no matter from what source it had immediately come—and paid off the obligations mentioned in the letter with it *as he had planned and as he had notified me in the letter*, and that left me owing that note. (Italics supplied.)

"This is very similar to all the other transactions."

The letter to which Mrs. Spence refers in the above statement is a letter to her from Governor Trinkle bearing date on January 2, 1931. These letters and other evidence in the case show that Mr. Trinkle was a brother-in-law of Mrs. Ethel K. Spence. He was her confidential and financial advisor and agent, to whom the borrower confided the complete management and control of the bulk of her property. The trustee was a half owner of the 600-acre Sand Mountain farm, the one-half interest to which was given as security for the payment of trust funds loaned. He was half owner of the stock and equipment on the farm. He was the active and the exclusively managing partner of the entire farming operations. The trustee and Mrs. Spence were joint obligors on other notes and bonds totaling quite a large sum. The financial, as well as the personal, interests of the two were so entwined, one with the other, that a financial disaster to one inevitably would affect adversely the financial interests of the other.

The trustee, in making this loan, was dealing with himself as the partner and financial agent of the borrower. The inference from all the evidence is that the trustee, in making the loan, was influenced by the necessity of the borrower rather than the best interests of the trust estate. He was not in a position to form an unbiased opinion or to exercise a sound discretion as to the best interests of the trust.

The proceeds of this loan were expended by the trustee and not by the borrower. In his letter to Mrs. Spence, he said that $7,905 of the $8,500 was used to pay amounts "due for various loans (not included in above) that have been made within the last year, plus back interest due on the $15,000 in the Farmers Bank that you have, over and above $5,000 that we owe jointly, of the $20,000 in the Farmers, also Yellowstone note of Trinkle Bros., and, also, the individual note of Ethel for $350.00, the individual note of Norred for $275.00, and the individual unpaid checks of Norred, for money gotten, amounting to $101.00." The remaining sum, $595, together with a like amount advanced by Mr. Trinkle, was deposited in the bank to the credit to E. Lee Trinkle, farm account, and used by him in the operation of the farms owned by the trustee and the borrower.

Among other pertinent facts bearing on the advisability of making this loan, in the first instance, was that the maker of this obligation personally owed $60,229 and was jointly obligated with the trustee on other notes totaling at least $25,000. Her attorney, T. F. Walker, testified that the value of her real estate was less than $50,000, which was all the property she then owned except "personal effects, and possibly some stocks that more than likely turned out to be valueless." Hence, the maker of this bond was insolvent at the time the trustee made the loan to her. She was not gainfully employed and her income seems to have been restricted to the proceeds from the operation of a boarding house and one-half the net proceeds from the income of two farms. Any prudent man, in making a loan with or without security, gives due weight to the ability of the maker to keep the interest and taxes paid, and repay the loan when due. The ability of the obligor in this instance to pay interest depended upon the successful operation of the farm by the trustee himself. Its rental value in 1940 was stated to be only $750.

An undivided interest in real estate is not an attractive security for a loan. Any one of the owners has a right at

any time to sue for partition and force a division or sale. The successful operation of a farm owned by two or more persons depends upon the energy, temperament and business ability of the respective owners. No prudent person would make such an investment without careful consideration of the possibility of disagreement, partition or sale.

Any valuation placed on Mrs. Spence's interest in the Sand Mountain farm would necessarily affect the interests of the owner of the other half. This owner, as stated, was the trustee himself. He was in no position to form a disinterested opinion as to the loan value of the property accepted by him as trustee to secure the payment of trust funds intrusted to his management and control. The successful operation of the Sand Mountain farm did not depend upon the maker of the $8,500 bond, but it depended upon the energy and the business capacity of the trustee himself. This is true not only of this farm but of several other enterprises in which the borrower and the lender were jointly interested.

The family ties, and the joint financial interests of the borrower and the lender in the subject matter tended to prevent the trustee from forming an unbiased judgment of the value of the security taken to secure trust funds. These ties and financial interests place the trustee in this position. His duties as a trustee required him to be free to act promptly, efficiently and vigorously, if necessary to preserve the funds under his control. On the other hand, his affection for his sister-in-law, and his own financial interests tended to induce him to indulge the debtor beyond financial safety of the trust fund. In other words, his duties as trustee were in conflict with his own personal interests, and with his natural desire to aid his sister-in-law and to act for her best interests as her financial agent. Such a position for a trustee is manifestly improper and should not receive the approval of a court of equity. "In short, it may be laid down as a general rule, that a trustee is bound not to do anything which can place him in a position inconsistent with the interests of the trust, or which have a tendency to

interfere with his duty in discharging it." 1st Story's Eq. Ju., sec. 322. The above was quoted with approval by Judge Moncure in *Statham* v. *Ferguson*, 25 Gratt. (66 Va.) 28, 41. See *Broaddus* v. *Broaddus*, 144 Va. 727, 130 S. E. 794; *Driver* v. *Blakeley*, 165 Ore. 312, 107 P. (2d) 524, 131 A. L. R. 985, note 990.

It does not appear how much, if any, of the interest was paid by the maker of the bond. It seems that the interest was paid by the trustee himself. He stated, in his memorandum of March 30, 1938, that "whilst all of this interest has been paid, as above set forth, a great deal of this interest has been paid by me individually (and I am holding those original notes with that interest to be repaid me when they are settled by Mrs. Spence, or by sale of her land, or when collected from other parties. The back of the notes other than the Spence notes will show how much interest is due me that I have advanced on same)."

The family connection of the parties, the fact that the trustee was the financial agent and advisor of the borrower, and the personal interests of the trustee in the proceeds of the loan and the farm given as security, make this investment a transaction which should be governed by the principles involved in those cases in which a trustee deals with himself in respect to the trust estate. This class of transactions is voidable by the beneficiary at his election, regardless of whether fraud or any advantage or inadequacy of consideration is shown by the evidence. This conclusion renders it unnecessary to discuss the evidence introduced by the general creditors of the Trinkle estate tending to show that the investment was good in 1930 when it was consummated.

In *Waddy* v. *Grimes*, 154 Va. 615, 647, 153 S. E. 807, it was held that where a beneficiary conveyed land by deed to the wife of the fiduciary, "Equity would raise a *prima facie* presumption against its validity, and would cast upon the party seeking to sustain the deed the burden of proving affirmatively its compliance with equitable requisites and overcoming the presumption.

■ "There is a distinction to be made between transactions occurring directly between a trustee and his *cestui que trust*, and those transactions in which the trustee deals with himself in respect to the trust estate. The latter class of transactions are voidable by the *cestui que trust* at his election without giving any reason or alleging any fraud, or any advantage or inadequacy of price."

Lord Ellenborough, in *Thompson* v. *Havelock*, 1 Campb. 528, 10 Revised Rep. 744, said that "no man should be allowed to have an interest against his duty."

■ It appears that the trustee made annual settlements of his account of the estate with the commissioner of accounts. In 1935 the trustee arbitrarily reduced the rate of interest from six to five per cent., and made disbursements annually thereafter at the reduced rate. These settlements were approved by the commissioner of accounts and confirmed by the trial court. However, the trustee did not furnish the commissioner with a list of the investments and the collateral held to secure payment, nor was he required by the commissioner so to do. Code, sec. 5408. Under the circumstances, confirmation of the commissioner's report by the court is not a bar to the recovery of the full legal rate of interest on this investment in this cause.

It is well to note that appellant does not impute to the trustee *mala fides* or fraud in this transaction. It is said in the brief: "We have said nothing in this petition which we intended as a reflection on the character or integrity of Governor Trinkle. It is our opinion that he fully expected and intended to account to the beneficiaries of the Simmerman estate for every penny of the principal plus the interest." Again, elsewhere in the same brief, it is stated: "If he were alive today, we believe he would be the last person to contend otherwise."

While the evidence does not show that Governor Trinkle personally assumed the obligation in question, as stated, the manner in which he made this loan, and his personal interest in the borrower, in the proceeds of the loan and in the

security given, render his estate liable, with or without proof of an express promise to pay the obligation.

For the reasons stated, the decree of the trial court is reversed and the cause remanded, with directions to the trial court to enter a decree permitting the substituted trustee to recover in accordance with the views expressed in this opinion.

*Reversed and remanded.*