# Richmond

ARCANGELA GELARDI PAVLOCK AND JOHN P. PAVLOCK v. HIRAM C. GALLOP AND GLADYS H. GALLOP.

April 24, 1967.

Record No. 6373.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Robert C. Stackhouse* and *Jerrold G. Weinberg* (*Stackhouse & Weinberg*, on brief), for the appellants.

*Garland M. Layton* (*Cromwell & Layton*, on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Hiram C. Gallop and wife (complainants) filed a bill in equity to compel Arcangela Gelardi Pavlock and husband (defendants) to convey to them a tract of land consisting of five lots owned by defendants on the shore of Chesapeake Bay in a section of the city of Virginia Beach known as Chesapeake Beach. The tract appears as lots 19, 20, 21, 22 and 23 in Block 3 on a map entitled Chesapeake Park, of record in the clerk's office of the city.

Defendants filed their answer denying that they had agreed to sell lots 19, 20 and 21, and asserting that they intended to sell only lots 22 and 23 to the complainants. They alleged that there had been a misunderstanding between the parties as to the identity of the property involved and hence no contract was actually made. They agreed that the bill correctly set forth the manner in which complainants agreed to pay for the property to be conveyed.

The cause was referred to a commissioner in chancery who heard the testimony *ore tenus* and filed his report, which stated his findings to be that the only land owned by the defendants in Block 3 consisted of the five lots described in the bill and that the contract of sale "clearly spells out" the northern, southern and eastern boundary lines thereof, and the evidence supplies the western line; and that the evidence furnished no support to the defendants' contention that lots 22 and 23 were the only ones to be conveyed. He reported that the complainants were entitled to specific performance and to have the five lots with the building thereon conveyed to them.

The defendants filed exceptions to the report. The trial court in a written opinion, which carefully reviewed the testimony of the witnesses and the exhibits introduced before the commissioner, concluded that the commissioner's report was supported by the evidence and entered a decree overruling the exceptions and requiring that the

five lots be conveyed to the complainants. This appeal is from that decree. The issue is whether there was a contract for the sale of the property which should be enforced.

The property in question, consisting of the five lots shown on the plat referred to, fronts on Chesapeake Bay and extends back southwardly from Bayside Avenue, or Road (which is a street only in name, being partly or wholly under the waters of Chesapeake Bay), to Ocean View Avenue (called Ocean Avenue in the contract of sale). The eastern boundary is Beaumont Road (formerly called Bradford Road). Lots 19 and 20 front on the Bay and are below or mostly below low water mark. Lot 20 is east of lot 19 and borders on Beaumont Road, while lots 21, 22 and 23 lie immediately behind 19 and 20 and border on Ocean View Avenue for a distance of 95.5 feet. Lot 21, the eastern of the three lots, borders on Beaumont Road. Normal high tide extends well up on the latter three lots and within some ten feet of a small house built on piles located on the rear of lots 22 and 23.

Gallop, one of the complainants, is a commercial fisherman. In 1962 and 1963 he had leased this property for use in connection with his fishing business and had constructed a rack on what is designated lot 21 on the map for drying his nets. He did not know the numbers of these lots at that time. At one time, before the events giving rise to this litigation, he had discussed purchasing the property with Pavlock, who had agreed that the price of $4,500 then quoted included "the net racks on the corner and all." In the winter of 1964, upon his return from a fishing trip, Gallop saw a sign indicating that this property was for sale. He contacted the real estate broker listed on the sign and a salesman, Derring, came to see him. Gallop had a plat of the area which did not show it subdivided into lots. He showed Derring on this plat what he wished to purchase and Derring told him the price was $5,000. Gallop offered $4,500, the price he said he had previously discussed with Pavlock. Derring wrote a contract describing the property according to what was shown on the plat and what Gallop told him he wanted to buy, and then told Gallop that he would have to take the matter up with the owners. Derring called Gallop within a few days and said that the Pavlocks had agreed to sell for $4,500 and had signed the contract.

After Gallop and his wife and Derring had signed the contract, Derring took it to the Pavlocks for them to sign. Derring discussed with them the terms of payment but there was no discussion about

the description of the property. Derring said he just handed the contract to them and they read it and signed it and no question was raised even as to who the buyer was until after they had signed it.

Derring said he then turned the contract over to an attorney, Bryan, who was to prepare the instruments for the closing, telling the attorney that he would have to ascertain the description of the property from the land records. According to Bryan, Mrs. Pavlock could not tell him exactly which lots were to be conveyed but she said she would meet with Derring to get it straight. Subsequently, said Bryan, Derring told him he had determined it was lots 22 and 23, so he prepared the papers accordingly.

At the settlement, when the Gallops learned that the Pavlocks proposed to convey only the two lots, they declined to close.

Mrs. Pavlock testified that when Derring brought the contract for her to sign she was busy and could not read the contract too well. She said that she wanted to sell only lots 22 and 23 because she needed the other lots so her tenants in the duplex (property south of Ocean View Avenue) would have access to swimming in the Bay. She said she thought the description in the contract was for location purposes to be able to find the property. She admitted that the real estate agent represented her.

This agent, Derring, testified that Gallop showed him what he wanted and pointed it out on the plat Gallop had. Derring did not know, he said, that this property had been divided into lots. When Mrs. Pavlock signed the contract she did not mention that the property had been divided into lots or that she wanted the conveyance limited to two lots or any other portion of the parcel. She did not in fact then know the description of the property by lot and block.

Pavlock said he signed the contract because Derring was his agent and he thought the agent was doing the right thing for him. He said he asked if his wife had signed the contract and then he signed it.

This contract, dated March 12, 1964, signed and sealed by the Gallops and by the Pavlocks is in the record. It describes the property as being all that certain piece, or parcel or lot of land described as follows, to-wit: "West corner of Beaumont Road and Bayside Road, between Ocean Avenue and Bayside Avenue, and all appurtenances thereon."

Defendants contend that this description is not adequate to permit equity to decree specific performance. This contention was clearly answered by the trial court in its opinion, as follows:

"The contract in this case describes the property as being on Beaumont Avenue (Bradford Avenue), Ocean View Avenue and Bayside Avenue. The property in question is located at this point. * * There can be no doubt from the description in the contract what property was intended. But even if not, when extrinsic evidence is presented, it is easily capable of identification. That is all that is required. The contract describes the property as a parcel or lot 'West corner of Beaumont Road and Bayside Road'. This point is identified on the plat of the property. The contract then continues to describe it as the property 'between Ocean Avenue and Bayside Avenue, and all appurtenances thereon'. It is clear it covers the property bounded by Bayside Road (Bayside Avenue), Beaumont Avenue (formerly Bradford Avenue) and Ocean View Avenue. Only the West boundary is not set forth. However, this parcel has a building on it, and is the only parcel owned by the defendants bounded by these three streets. It is admitted by the defendants that the lot was to extend to the West line of lot 23, which is the Western line in question. The contract carries it to the three streets in question. As I have pointed out above, much of the land is under water, and plaintiffs are not getting all of the land covered by the description in the contract. Yet, they knew the land was not there, and are willing to take what is left of the lots."

In a suit for the specific performance of a contract to sell land, the description of the property must be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. " 'The description need not be given with such particularity as to make a resort to extrinsic evidence [un]necessary. Reasonable certainty is all that is required. Extrinsic proof is allowed in order to apply, not to alter or vary, the written agreement.' " *Grayson Lumber Co.* v. *Young*, 118 Va. 122, 126, 86 S. E. 826, 827. See also *Asberry* v. *Mitchell*, 121 Va. 276, 279, 93 S. E. 638, 639; *Chesapeake & Ohio Ry. Co.* v. *Williams Slate Co.*, 143 Va. 722, 734, 129 S. E. 499, 502; 49 Am. Jur., Specific Performance, § 115, pp. 134-5.

We agree with the trial court that the description of the property was adequate to identify it.

Defendants further contend that the evidence does not show a meeting of the minds of the parties such as to create a binding contract. This is based on their contention that they intended to sell

and convey only lots 22 and 23. But this contention is contradicted by their signed contract. Neither of these two lots is at the corner of Beaumont Road and Bayside Road, which they state in their contract to be the beginning point of the tract which they agreed to convey. In fact, neither of these two lots touches either Bayside or Beaumont at any point. As the trial court pointed out, defendants' contention that they wanted to hold lot 21 to provide access to the water from their duplex apartment is answered by the fact that Beaumont Avenue provides such access. The claimed intention to convey only lots 22 and 23 was refuted by the contract and certainly was not known or shared by complainants.

The evidence is that Gallop, in discussing the possible purchase with Derring, clearly indicated that he sought the entire area owned by the Pavlocks, between Ocean View Avenue and the Bay and west of Beaumont Avenue, which was the area he had previously rented for use in his fishing business. When he first discussed with Pavlock the matter of purchasing the property, he told him he would want the house and the area where the net rack had been built by him and access to the water. While Gallop did not know the numbers of the the lots, or, apparently that the sand hills which composed the property were even designated by lots, it is clear what he offered to buy.

The sellers signed the contract prepared by their agent containing a description which clearly included more than they afterwards claimed they were intending to sell. They only concerned themselves at the signing with the financial arrangements. The conclusion of the commissioner, approved by the trial court, that a valid contract was formed is clearly supported by the evidence.

In this case we have the report of the commissioner who heard the testimony *ore tenus* and found that a valid contract existed and that it adequately described the subject matter. His report was fully approved by the trial court after a careful review of the evidence. The decree of the court confirming the report carries the presumption of correctness and will not be reversed unless plainly wrong. *McGrue, Executrix v. Brownfield*, 202 Va. 418, 117 S.E.2d 701; 16 Mich, Jur., Reference and Commissioners, § 39, p. 35.

Such report is not entitled to the weight given the verdict of a jury on conflicting evidence, Code § 8-250, but it is entitled to great weight and should not be disturbed unless its conclusions are unsupported by the evidence; and this rule applies with special force when the findings of the commissioner have been approved by the

trial court. *Surf Realty Corp.* v. *Standing*, 195 Va. 431, 78 S.E.2d 901.

 Specific performance, as we have said, is not a matter of absolute or arbitrary right and is addressed to the sound discretion of the court; but the discretion to be exercised is not to be arbitrary or capricious and where the contract sought to be enforced is proved and is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree specific performance as it is for a court of law to give damages for a breach of it. *Bond* v. *Crawford*, 193 Va. 437, 69 S.E.2d 470; *Lucy* v. *Zehmer*, 196 Va. 493, 84 S.E.2d 516.

We find no error in the decree appealed from and it is accordingly

*Affirmed.*