## Richmond

CURTIS MALCOLM CREASY v. KATHLEEN B. HICKS HENDERSON, ET AL.

April 27, 1970.

Record No. 7113.

Present, I'Anson, Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*William W. Berry* (*M. E. Padgett, Jr.; Berry & Minnix,* on brief), for appellant.

*Frank L. Thomasson,* for appellee Sarah Maude Bolling.

COCHRAN, J., delivered the opinion of the court.

Curtis Malcolm Creasy filed his bill in equity against Kathleen B. Hicks Henderson, and others, praying that a deed conveying certain real estate of the late Rubye Alma Creasy be set aside as invalid.

The deed under attack, dated January 8, 1965, acknowledged January 11, 1965, and recorded January 13, 1965, was executed on behalf of Rubye Alma Creasy, unmarried, by her sister, Sarah Maude Bolling, as her attorney-in-fact. It conveyed to Mrs. Bolling's daughter, Mrs. Henderson, of Richmond, Miss Creasy's dwelling and the surrounding 12½ acres from her tract of 109 acres near Forest in Bedford County. Miss Creasy, who was suffering from cancer, died at the age of 59 January 16, 1965. She left a will under which all her real estate was devised to a nephew, Curtis Malcolm Creasy, of Richmond, and all her personal estate was bequeathed to Mrs. Bolling.

It was alleged in the bill that Mrs. Bolling occupied a position of trust as attorney-in-fact for Miss Creasy under a power of attorney, and that she fraudulently and unnecessarily converted real estate into personalty to her own benefit by conveying the home and 12½ acres to her daughter for a grossly inadequate consideration. It was further alleged that if Miss Creasy ever consented to the conveyance her consent was obtained through the exercise by Mrs. Bolling of undue influence over her when she was suffering from "weakness of mind and will". The joint answer of Mrs. Henderson and Mrs. Bolling denied the allegations of the bill and asserted that the conveyance was at the request of and with the consent of Miss Creasy, was for a valuable consideration and was a bona fide transaction.

The cause was referred to a commissioner in chancery who, after hearing the evidence *ore tenus*, filed a report finding that Miss Creasy was mentally competent on January 1, 1965, when she last conferred with her lawyer, and again on a subsequent occasion when the names of appraisers were discussed, that she originally intended to make a gift of the property to Mrs. Henderson, that her attorney suggested that consideration be paid, and that Miss Creasy "acquiesced" in the suggestion and the transaction then became a sale.

The commissioner reported a number of facts which "under appropriate circumstances would support a charge of fraud . . .", e.g., Mrs. Bolling profited from the sale, the sale was to her daughter, the consideration of $5000 was based on appraisals made by Mrs. Bolling's husband, son, and employer when the fair market value of the property was approximately $10,000, and the sale was unnecessary.

The commissioner concluded, however, from the evidence that Miss Creasy, and not Mrs. Bolling, was the "dominant party", "that

the conveyance in question was the wish and desire of . . . Miss Creasy, and originated solely with her," and that neither Mrs. Bolling nor Mrs. Henderson was guilty of fraud or undue influence which would justify setting aside the deed.

The lower court, according great weight to the commissioner's report, found that there was credible evidence to support it, that while Miss Creasy originally intended a gift to Mrs. Henderson "the fact that the consummated transaction was a sale . . . does not frustrate her ultimate intentions nor constitute fraud or undue influence under the circumstances. Since the original motivation . . . was intended to be without consideration, it cannot be said that the amount of the actual consideration was so grossly inadequate as to invalidate the transaction." By decree entered June 19, 1968, exceptions to the commissioner's report were overruled, the report was confirmed and the bill dismissed. From this decree we granted an appeal.

The evidence shows that Miss Creasy's health steadily failed after she was injured in an automobile accident in July, 1964. Her lawyer, while representing her in the personal injury claim arising from her accident, prepared for her a will which she executed August 11, 1964 and a general power of attorney designating Mrs. Bolling her attorney-in-fact, which she executed August 18, 1964. The will and power of attorney were retained by her lawyer for safekeeping.

During ensuing months Miss Creasy had a stroke and was hospitalized several times. In October she became incapable of operating her automobile. In early December she was found to have terminal cancer. She continued to live in the family home, which she owned, where she was attended by paid employeees and her sister, Mrs. Bolling, who lived in the neighborhood.

On January 1, 1965, Miss Creasy was brought to the home of a niece, Mrs. Scott, in the Town of Bedford for a midday family party. While there she asked to see her lawyer, who lived across the street. After talking with him at length Mrs. Bolling and Mrs. Scott arranged for him to come to Mrs. Scott's where he conferred with Miss Creasy alone for about an hour. He testified that she "wanted to make changes in her will" or ". . . change the disposition she had made in her will." According to the lawyer "[s]he wanted to deed to Kitty Hicks [Henderson] . . . the house and some acreage around it, and . . . she referred to the acreage as being ten to twelve acres." He explained to Miss Creasy that Mrs. Bolling could do this under the power of attorney which at that time had never been used. "She

wanted it done, we discussed the power of attorney—who mentioned it first, I can't tell you that; I explained to her that this would be done by Mrs. Bolling as her attorney-in-fact. This was the way I was instructed to do it."

Accordingly, the lawyer followed this procedure rather than one of the more obvious and desirable alternatives of preparing a codicil to her will or a deed for execution by Miss Creasy. Nothing was said about selling the property and she never mentioned money to her lawyer. He thought that she wanted Mrs. Henderson "to have it without paying anything."

After the conference at the Scott home, the lawyer discussed Miss Creasy's condition with Mrs. Bolling and Mrs. Scott and reported ". . . that her mind seemed to be clear, but she seemed to be awfully tired." This discussion would indicate that doubts existed as to Miss Creasy's continuing capacity to transact business. Her lawyer never saw or communicated with Miss Creasy again and thereafter dealt with Mrs. Bolling relative to the conveyance.

Both Mrs. Bolling and Mrs. Henderson testified that the conveyance was intended to be a gift and that Miss Creasy's lawyer suggested payment of some consideration. The record shows clearly that the commissioner and the lower court were justified in finding that Miss Creasy originally intended a gift to Mrs. Henderson.

The lawyer understood from Mrs. Bolling that money would be needed for Miss Creasy's expenses. In a letter to Mrs. Bolling dated January 4, 1965, he referred ". . . to your last telephone call today pertaining to the desire to sell the residence and a few acres surrounding it . . .", requested a surveyor's plat and the "complete name or names of the purchasers . . ." and suggested that she have the property appraised by a reputable person in the Forest community. So the decision to sell the property was made in a telephone conversation between Mrs. Bolling and Miss Creasy's lawyer.

Any knowledge that Miss Creasy had of a proposed sale of her home is based upon uncorroborated testimony of Mrs. Bolling and Mrs. Henderson, the beneficiaries of the transaction. Mrs. Bolling testified that a discussion about getting appraisers to value the property took place between Miss Creasy, her brother Ed, father of Curtis, and herself, after Miss Creasy's lawyer had advised that three disinterested appraisers be used. She recalled that Miss Creasy rejected one prospective appraiser. The record does not disclose why the question of appraisers was ever discussed with Miss Creasy.

Ed Creasy, who farmed Miss Creasy's land as well as his own

adjoining land, admitted that he had a conversation with Mrs. Bolling in which she asked him to get appraisers. There is an immaterial conflict in the evidence as to why Ed Creasy, after arranging for three distinterested appraisers to serve, later notified them that they would not be needed. But it is uncontradicted that no independent appraisal was ever made.

Mrs. Bolling reported the purchase price of $5000 to Miss Creasy's lawyer without revealing that it was not based upon a distinterested appraisal. She arranged for a loan from her husband in this amount to their daughter, Mrs. Henderson. On January 13, 1965, after the purchase price had been deposited in accordance with his instructions, Miss Creasy's lawyer recorded the deed to Mrs. Henderson, together with the power of attorney under which it had been executed by Mrs. Bolling.

When Mrs. Henderson visited Miss Creasy on this date before returning to her home and job in Richmond, she discovered that her aunt thought that she had paid $400 for the property. Mrs. Henderson testified that Miss Creasy told her "I didn't want you to pay $400 for the place, you make them give it back to you."

The commissioner found that this statement and Mrs. Bolling's testimony about Miss Creasy objecting to an appraiser established acquiescence by Miss Creasy in her lawyer's suggestion of a sale rather than a gift. This conclusion we are unable to accept. The most that can be made of Mrs. Bolling's testimony is that Miss Creasy voiced an objection to a prospective appraiser under consideration when sale of her property was being discussed. The least that can be made of Mrs. Henderson's testimony is that Miss Creasy never wavered in her intent that the property be given to her niece and not sold to her for even $400.

We are aware that the report of a commissioner, especially when approved by the trial court, should not be disturbed unless its conclusions are unsupported by the evidence. *Pavlock v. Gallop*, 207 Va. 989, 154 S. E. 2d 153 (1967). Conflicts in evidence have been resolved by the confirmed report.

Accepting, as we must, the testimony of Mrs. Bolling and Mrs. Henderson as credible it nevertheless fails to establish acquiescence that would constitute ratification of the sale by Miss Creasy after she was fully informed. So this finding of the commissioner is without evidence to support it.

■ Use of the device of a sale to Mrs. Henderson for $5000 of property worth at least $10,000, the lower court held, did not as a

practical matter frustrate Miss Creasy's intention to make a gift. All costs of conveying the land, including closing costs normally assumed by the purchaser, were paid out of Miss Creasy's funds; title was vested in Mrs. Henderson; Mrs. Henderson borrowed from her father the purchase money which, subject to costs and expenses of administration and claims of creditors, would ultimately be paid to her mother under Miss Creasy's will. Indirectly the sale might be considered to be a gift to Mrs. Henderson and Mrs. Bolling, but it was not a gift to Mrs. Henderson alone.

The commissioner found that the general power of attorney from Miss Creasy to Mrs. Bolling did not authorize the attorney-in-fact to execute a deed of gift, even upon the principal's oral instructions. No exception was taken to this conclusion of law, confirmed by the lower court, no cross-error has been assigned to it and we take it to be finally determined and not now subject to further consideration. Rule 5:1 § 4.

We agree with the commissioner that Mrs. Bolling had authority under the power of attorney to make a "proper" sale of Miss Creasy's real estate. Although the evidence shows that Miss Creasy either was mentally competent or subject to lucid intervals until perhaps the day of her death, the power of attorney by its terms continued regardless of her mental or physical incapacity. Thus, it could be exercised to sell her real estate, if necessary, either with or without Miss Creasy's knowledge. But here the sale was not necessary.

The lower court took the position that since Miss Creasy wanted to give the property to her niece she was not hurt by having the property sold to Mrs. Henderson for half price. To confirm the sale through this kind of rationalization would permit a fiduciary to transgress firmly established rules of conduct which we are unwilling to ignore.

A fiduciary may not take a position inconsistent with the interests of the principal. *Statham* v. *Ferguson,* 66 Va. (25 Gratt.) 28 (1874); *Ferguson* v. *Gooch,* 94 Va. 1, 26 S. E. 397 (1896); *Parsons* v. *Wysor,* 180 Va. 84, 21 S. E. 2d 753 (1942); *Byars* v. *Stone,* 186 Va. 518, 42 S. E. 2d 847 (1947). Here, the fiduciary was participating in a transaction by which her daughter would acquire the principal's property for an inadequate consideration without a fair appraisal, she herself would ultimately benefit financially and the bedridden principal would lose the right of possession as well as legal title to her home. These acts on the part of the fiduciary were presumptively fraudulent, and the burden was on her to overcome the

presumption of constructive fraud by clear and satisfactory evidence, more than a mere preponderance of the evidence. *Nicholson* v. *Shockey*, 192 Va. 270, 64 S. E. 2d 813 (1951); *Owens* v. *Owens*, 196 Va. 966, 972, 86 S. E. 2d 181, 185 (1955).

The commissioner concluded that Mrs. Bolling's acts were not fraudulent because Miss Creasy was the dominant party. This is merely another way of stating that the acts of the attorney-in-fact which were presumptively fraudulent were not in fact fraudulent because they were done with the full knowledge, approval and consent of her principal. We cannot agree.

There is no evidence that Miss Creasy ever had full knowledge of the facts. On the contrary, it appears that she did not understand what was being done and never approved the transaction as revised and consummated. Certainly, Mrs. Bolling fell far short of carrying the burden which rested upon her of proving that her principal was fully informed of all material facts and consented to the change in her plans.

The commissioner found, and we agree, that Mrs. Henderson had knowledge of the same facts as Mrs. Bolling and that any constructive fraud of the latter would be imputed to the former to deny her the status of bona fide purchaser for value.

The decree of the lower court is reversed and the cause remanded for such further proceedings as may be necessary to carry out the views herein expressed.

*Reversed and remanded.*

GORDON, J., Dissenting.

While *sui juris* Miss Creasy instructed her counsel to prepare a deed, to be executed and delivered by her attorney-in-fact, conveying a parcel of real estate to Mrs. Henderson as a gift. The Commissioner so found, and both the trial court and this Court accept that finding.

This Court cancels the conveyance because of fraud. And it imputes fraud because the attorney-in-fact, having on advice of Miss Creasy's counsel cast the transaction in the form of a sale rather than a gift, conveyed the property for an inadequate consideration.

Where no consideration is intended I cannot impute fraud, actual or constructive, from an inadequate consideration. So I must dissent.