## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Central Fidelity Bank

v.

Lewis B. Goode, Jr.

Lewis B. Goode, Jr.

v.

Central Fidelity Bank

December 13, 1990

BY JUDGE RICHARD S. MILLER

In the captioned cases, I will dismiss both the bill of complaint and the cross-bill for the reasons herein stated. I also rule that the applicable statute of limitations to Central Fidelity Bank's claim to be five years under Code § 8.01–243(B).

*Central Fidelity Bank's Claim Against Lewis B. Goode, Jr.*

A. *The Statute of Limitations*

Whether the one-year limitation period of § 8.01–248 or the five-year limitation period of § 8.01–243(B) applies to a claim such as Central Fidelity Bank's has not been decided in Virginia. No case law in any jurisdiction was found concerning estate administration fees as a corporate opportunity. No Virginia case was found specifically referring to the term "corporate opportunity." However, illustrative of the fact that "injury to property," as that term is used within § 8.01–243(B), contemplates injury to more than just real or personal property can be seen in the holding in *Lavery v. Automation Manage-*

*ment Consultants, Inc.*, 234 Va. 145, 360 S.E.2d 336 (1987), where the Supreme Court of Virginia, in considering the tort of unauthorized use of a consultant's name for trade purposes, held that the plaintiff had stated a claim for injury to property and that the five-year limitation applied, rather than the one-year limitation, citing *Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192 (1956), which involved injury to the expectation of future business patronage.

A close reading of *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 374 S.E.2d 55 (1988), cited by Goode's counsel, shows that the plaintiff's claim in that case was a contract claim, not a tort claim for injury to property, which makes it distinguishable from the case at bar.

In the captioned case, Central Fidelity Bank's claim sounds in tort, and I stand by the Court's previous ruling that its claim is for damage to property and that the five-year limitation applies.

## B. *Corporate Opportunity*

On the issue of burden of proof, I rule that Central Fidelity Bank must prove its claim that Goode was a fiduciary and that he took a position inconsistent with the interests of Central Fidelity Bank by a preponderance of the evidence. Once this should be proven, the burden of proof would then be on Goode to overcome this by clear and convincing evidence. *See Creasy v. Henderson*, 210 Va. 744, 749, 173 S.E.2d 823 (1970), where the Supreme Court of Virginia used the term "clear and satisfactory." This means, "more than a mere preponderance of the evidence." *See Creasy* at p. 750.

A corporate opportunity is a business opportunity in which a corporation has an expectancy, property interest, or right, or which in fairness should otherwise belong to the corporation. *Black's Law Dictionary* 340 (6th Ed. 1990). It exists "when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has a capacity to engage." 3 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 861.1 at 285 (1986).

One of the earlier and leading cases discussing a corporate official's usurping a corporate opportunity is *Guth v. Loft, Inc.*, 23 Del. Ch. 255, 5 A.2d 500 (1939). The *Guth* case, *supra*, "has been cited as precedent in almost every corporate opportunity opinion handed down since it was decided in 1939, no matter which rule the court adopts." *See,*

Walker, *Legal Handles Used To Open or Close The Corporate Opportunity Door*, 56 Nw. U. L. Rev. 608, 617 (1961).

The *Guth* court stated:

> [I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. At 511.

Courts frequently use the "fairness" test to determine the existence of a corporate opportunity by applying ethical standards of what is equitable under the circumstances, so that if it has been determined that the appropriated opportunity is within the corporation's "business expectations," then the "fairness" test is utilized to determine whether the corporate officer violated his fiduciary duty by pursuing the opportunity. The "degree of likelihood of realization from the opportunity is the key to whether an expectancy is tangible" and thus a corporate opportunity. 3 *Fletcher* § 861.1 at 285.

In the case of *Hofheimer v. Seaboard Citizens National Bank*, 154 Va. 392, 153 S.E. 656 (1930), *rehearing opinion*, 154 Va. 896, 156 S.E. 581 (1931), *cert. denied*, 238 U.S. 855 (1931), it was stated:

> The designation in a will of one as executor does not confer a property right upon the person so designated. However precious may be the mark of confidence bestowed by such nomination, it does not amount to property. There is nothing tangible about it. *Nothing* vests in a person so nominated by the mere execution of the will . . . The will is ambulatory and may be changed, revoked or cancelled by the maker at any time during his life. 154 Va. at 399 (Emphasis added).

There is no question that Central Fidelity Bank has shown by a preponderance of the evidence that Central Fidelity Bank, through its trust department, was and is in the business of handling decedents' estates. It also has shown that Cy Eichelbaum was one of its customers much earlier than in 1987 and that he had a will naming Central Fidelity Bank as his personal representative. However, in the present

case, I find that Cy Eichelbaum in 1987 and again in 1988 exercised his unilateral right to nominate his own personal representative so as to designate someone other than Central Fidelity Bank, and therefore, any corporate opportunity which Central Fidelity Bank may have had was virtually terminated. *See, Orchard v. Covelli*, 590 F. Supp. 1548 (E.D. Pa. 1984). I further find from the evidence that this change was initiated and made solely by Mr. Eichelbaum without any urging or influence by Goode. To the contrary, the unrebutted evidence is that Goode urged Eichelbaum not to change Central Fidelity Bank as his nominated personal representative. In support of this and in addition to Goode's testimony, see the testimony of Katherine Eichelbaum, Robert Eichelbaum and Kenneth S. White concerning Mr. Eichelbaum's decision not to nominate the bank and to select someone else. The evidence is that Eichelbaum would have selected another person to be his personal representative if Goode would not do so. *See* Transcript, p. 217, line 14, through p. 219, line 1. From the foregoing evidence, I find that the degree of likelihood of realization from any opportunity that Central Fidelity Bank may have had to be the fiduciary under Eichelbaum's will after Mr. Eichelbaum changed the nominee was so remote as to not amount to a tangible expectancy. The evidence further shows that Central Fidelity's written "Code of Conduct" (Def's Ex. 11) paragraph 1.18, prepared by Central Fidelity, required the approval of certain Central Fidelity officials "before an employee can *accept appointment* as an administrator, trustee, executor," etc. (emphasis added). While there was some evidence that the term "appoint" is sometimes used synonymously with the term "nominate," the expert witnesses for both parties (Professors Johnson and Alford) agreed that the legal meanings of those two words, that is, the more accurate meanings, are different. *See* Transcript, p. 255, line 21 to end, p. 257, line 2, and pp. 777–779, line 16. Central Fidelity Bank, which prepared its Code of Conduct, applicable to its employees as a condition of employment, cannot be heard to say and is estopped from asserting that its Code of Conduct has a different meaning than its accurate meaning. *Carter Equipment Co. v. John Deere*, 681 F.2d 386 (5th Cir. 1982); *Branch v. Virginia Employment Commission*, 219 Va. 609, 249 S.E.2d 180 (1978); *Jackson Rapid Delivery v. Jones Truck Lines, Inc.*, 641 F. Supp. 81 (S.D. Miss. 1986); *Bradley v. Colonial Mental Health and Retardation Services Board*, 856 F.2d 703 (4th Cir. 1988).

Central Fidelity Bank's argument that Goode acted in bad faith in violating his fiduciary duty to disclose the change in the personal representative under Eichelbaum's will and that he was intentionally withholding information from Central Fidelity Bank is at best tenuous and unpersuasive considering the evidence that Goode and Eichelbaum at all pertinent times during the preparation of the 1987 and 1988 Eichelbaum wills were dealing with an attorney who was a member of Central Fidelity Bank's Board of Directors and Executive Committee of the Board of Directors. Transcript, p. 296, line 17, through p. 297, line 21, Transcript, p. 298, line 18, through p. 299, line 17.

The evidence is also that in February, 1988, Goode provided Central Fidelity Bank a letter dated April 24, 1987 (designated in evidence as Def. Ex. 6) in which Eichelbaum informed Central Fidelity through one of its trust officers, Mr. Russell, that he had named Goode as his trustee. This was clearly indicative of a change in fiduciaries under the will. *See* Transcript, p. 155, line 11, through line 16, and p. 159, line 17, through p. 161, line 14. Aside from all the conflicts in the evidence as to when Goode delivered other documents to Central Fidelity Bank, I find that Goode did provide all of the documents involved to Central Fidelity Bank prior to the present litigation. Transcript, p. 545.

In summary, I find by clear and convincing evidence that Goode did not breach any fiduciary duty to Central Fidelity Bank. While I have ruled against Central Fidelity Bank on its claim, I do not find that its claim is completely unfounded as claimed by Goode, since it does present justiciable issues of both law and fact.

### Goode's Claim Against Central Fidelity Bank

Goode claims that Central Fidelity intentionally interfered with his contract of employment with Davidson, Garrard and Goode. This tort claim is described in the *Restatement of Torts, 2d,* § 766 (1977), as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Goode's contract with Davidson, Garrard and Goode was one terminable at will. Therefore, in order to recover, a plaintiff, such as Goode, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but *also* that the defendant employed improper methods. See *Duggin v. Adams*, 234 Va. 221, 226–227, 360 S.E.2d 832, 836 (1987) (quoting *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)). Until a party terminates an at-will contract, it is "valid and subsisting and [a third party] may not *improperly* interfere with it." (Emphasis added.) *Glass v. Glass*, 228 Va. 39, 51–52, 321 S.E.2d 69, 76–77 (1984). Intentional interference with the prospective business of a competitor for business reasons is not "improper interference" giving rise to a tortious interference cause of action. "The actor may use persuasion and he may exert limited economic pressure." And, "he may refuse to deal with the third persons in the business in which he competes with the competitor if they deal with the competitor." *See, Restatement of Torts 2d*, § 768, cmt. (e).

The preponderance of the evidence shows that Central Fidelity Bank intentionally interfered with Goode's contract of employment. There is also evidence that the motivation for such interference, in part, was Central Fidelity Bank's ill will towards Goode. However, Goode's evidence fails to preponderate in showing that there was no valid business reason aside from Central Fidelity Bank's ill will towards Goode, in terminating custodial account services to Davidson, Garrard and Goode customers. *See* Transcript, pp. 680–682. A valid business reason for Central Fidelity's actions was to prevent further business attrition and loss of clientele. Transcript, pp. 939–941.

Even if Goode had proven by a preponderance of the evidence each of the elements of his tortious interference claim, which I have found that he has not, he has also failed to prove causation of any damages as a result of such interference by Central Fidelity. He has also failed to prove any amount of any such damages to a reasonable certainty. The evidence indicates that Central Fidelity's contact with Davidson, Garrard and Goode's existing clients did not affect any of Goode's clients. Transcript, p. 504. There was no apparent similar decrease in business production by Davidson, Garrard and Goode to the decrease experienced by Goode. The evidence discloses too many other possible causes or contingencies to form an accurate measure of damages. *See, E. I. Dupont DeNemours & Co. v. Universal Moulded Products Corp.*, 191 Va. 525, 62 S.E.2d 233 (1950).